[Cite as *State v. Parker*, 2019-Ohio-830.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2017-12-176 |
| | : | O P I N I O N |
| - vs - | | 3/11/2019 |
| | : | |
| LESTER PARKER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-12-1807


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Gieske Law Office, LLC, Krista Gieske, 810 Sycamore Street, 3rd Floor, Cincinnati, Ohio 45202, for appellant


**HENDRICKSON, J.**

{¶ 1} Lester Parker appeals his convictions in the Butler County Court of Common Pleas for aggravated arson and murder. For the reasons described below, this court affirms Lester's convictions.

{¶ 2} This case stems from the death of firefighter Patrick Wolterman, who died in the line of duty while attempting to extinguish a fire at Lester's home on December 28, 2015.

The state alleged that the fire was the result of arson, that Lester arranged for his nephew – codefendant William Tucker – to set the fire, and that Lester's motive was to collect insurance proceeds.

{¶ 3} A Butler County grand jury indicted Lester on two counts of aggravated arson, violations of R.C. 2909.02(A)(1) and (A)(2), and one count of felony murder, a violation of R.C. 2903.02(B). In the same indictment, the grand jury charged William with identical counts.

{¶ 4} The matter proceeded to a joint, 9-day, jury trial. The state's evidence indicated that Lester was deeply in debt and that he arranged for William to break into the basement of his home located at 1310 Pater Avenue in Hamilton, Ohio, and ignite a fire while Lester and his wife were vacationing in Las Vegas. For his part in the crime, William would be paid in Lester's prescription oxycodone pills, which he would retrieve from the home before setting the fire.

{¶ 5} The state introduced evidence that the fire was ignited by gas and ethanol in the basement of the home, and that the arsonist had broken into the home through the cellar doors. The state presented substantial circumstantial evidence that Lester planned the arson. That evidence included deleted photographs recovered from Lester's secure digital ("SD") card depicting the interior of the home just prior to the fire, which Lester presumably intended to use in support of an insurance claim. Coincidentally, these photographs helped establish that Lester had moved certain items and mementos out of the home prior to the fire. Before and after the fire, Lester exchanged numerous calls with telephone numbers used by William.

{¶ 6} William testified and denied setting the fire or being involved in any conspiracy. However, he admitted to being in the same area as the home precisely when the fire

occurred in the early morning hours of December 28, 2015. But William claimed he was meeting Lester's daughter to buy oxycodone. Lester testified and denied the allegations.

{¶ 7} The jury found both men guilty of all charges. The court sentenced each to 15 years to life in prison. Lester appeals, raising six assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN FAILING TO ORDER SEVERANCE OF THE TRIALS TO THE PREJUDICE OF PARKER.

{¶ 10} Lester argues that the court erred in failing to order separate trials. Lester concedes that he did not object on this basis, either before trial or during trial, and is therefore limited to a review for plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997). This court should notice plain error with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 84.

{¶ 11} Joinder of defendants and the avoidance of multiple trials is favored in the law. *State v. Thomas*, 61 Ohio St.2d 223, 225 (1980). Joinder conserves judicial and prosecutorial time, lessens the considerable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries. *Id.* "[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even

though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance." *State v. Schiebel*, 55 Ohio St.3d 71, 88-89 (1990).

{¶ 12} Crim.R. 14 permits a trial court to grant separate trials if joinder has a prejudicial effect on the accused. However, the accused bears the burden of proving that prejudice. *State v. Coley*, 93 Ohio St.3d 253, 259 (2001). "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way – by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever.'" *Schiebel* at 89, quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

{¶ 13} Lester argues that his joint trial deprived him of a fair trial because jurors could have been confused or misled by prejudicial evidence that was only relevant to William's convictions. Lester also argues that his defense was prejudiced because William was permitted to "leap frog" Lester's defense case with one of William's witnesses. Finally, Lester argues that jurors may have found him guilty merely by his familial association with William.

{¶ 14} This case involved a conspiracy to commit arson that resulted in a homicide. The state necessarily had to submit evidence of Lester's and William's individual actions in furtherance of the conspiracy to establish its case. Accordingly, much of the evidence that would have been relevant and admissible in a stand-alone trial against William would also have been relevant and admissible in a stand-alone trial against Lester.

{¶ 15} To the extent there was some evidence solely related to William's charges, there is no evidence in the record to support Lester's argument that the jurors were unable to differentiate that evidence from evidence solely attributable to Lester. In this regard, the court specifically instructed the jury on the concept of separate evidence and that it should only consider evidence as it relates to each defendant. This court presumes that jurors

follow the instructions provided by the trial court. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 73.

{¶ 16} There is no merit to the assertion that jurors may have found Lester guilty simply because of a familial association. As will be addressed in the next assignment of error, the jury convicted Lester on substantial circumstantial evidence.

{¶ 17} Finally, there is no support in the record for the argument that jurors could have been confused by the presentation of William's witness, Kim Brooks, before Lester's defense case. Kim was one of William's girlfriends and was with him on the day of the fire. The record indicates that Kim was a reluctant witness and William's counsel had to expend considerable effort to obtain her appearance.

{¶ 18} Kim did appear on the sixth day of the trial and after the state had closed its case. Although Lester was entitled to present his defense case before William, the parties and court agreed that William could call Kim before Lester's defense case to ensure that she testified. After Kim testified, Lester requested that William continue his defense case. The state objected to that request and the court denied it.

{¶ 19} Lester does not articulate how Kim's out-of-turn appearance prejudiced him other than to argue that it "compounded the conflation of issues." It is unclear how Kim's out-of-turn testimony could have prejudiced Lester's defense case or deprived him of a fair trial. Kim had no direct knowledge of Lester's involvement in the conspiracy. On this record, Lester has not demonstrated that his joint trial was manifestly prejudicial, nor has he established plain error. This court overrules Lester's first assignment of error.

{¶ 20} Assignment of Error No. 2:

{¶ 21} PARKER'S CONVICTION FOR AGGRAVATED ARSON-FELONY MURDER WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶ 22} Lester argues that the state submitted legally insufficient evidence to establish his complicity in the offenses underlying his felony murder conviction, i.e., the two counts of aggravated arson. Specifically, Lester argues that there was insufficient evidence that he conspired with and solicited William to commit arson.

{¶ 23} The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. *State v. Everitt*, 12th Dist. Warren No. CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the sufficiency of the evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} As it was undisputed that Lester was in Las Vegas at the time of the fire, the state was required to prove Lester's complicity in the offense, i.e., that Lester knowingly solicited or conspired with William to commit aggravated arson at his home. *See* R.C. 2923.03.

{¶ 25} Evidence submitted at trial demonstrated that on the day of the fire, Lester had debts totaling $143,168. Of that amount, nearly $60,000 was past due. Lester had $500 in two checking accounts, was 65 years old, and had been unemployed since 1986. His household income was $1,440 in social security income and $50 in food assistance. However, Lester regularly filled a prescription for 180 tablets of 30 milligrams of Roxicet, which is oxycodone. The evidence was that the street value of Roxicet could be as much as $30 per tablet.

{¶ 26} The evidence indicated that William, then living in Richmond, Kentucky, was a roofer. He also sold pain pills. He was known to Lester's daughter, Melissa Jones, as someone who you would look to to accomplish "dirty deeds."

{¶ 27} William did not regularly possess a cellular phone. He would instead use the phones of his friends and family, including his brother Stacy's cellular phone. On December 20, 2015 – eight days before the fire – Lester's cellular phone records indicated that he called Stacy's cellular phone. The call lasted 35 minutes. Stacy testified that he rarely spoke with Lester.

{¶ 28} Two days later, William sent Facebook messages to one of his girlfriends, Kim Brooks, a Hamilton resident, stating that he would have "plenty of pain pills" the following Monday, or December 28, 2015. In other Facebook messages, William alluded to coming to Hamilton to take care of "something" "very important." William arranged through Kim to obtain a ride to Hamilton.

{¶ 29} Immediately before Christmas Eve 2015, Lester began moving various items out of his home and into the detached garage structure next to his home. These items included a handmade miniature log cabin, Lester's and his wife Bertha's framed carrying concealed weapon permits, and a decorative butler statue.

{¶ 30} Linda Rose testified that she dated William. She did not know Lester or Bertha. However, on December 27, 2015, at 1:38 p.m., a cellular phone associated with Linda Rose contacted Lester's cellular phone. The call lasted 27 seconds.

{¶ 31} Cheryl Sullivan, Lester's daughter, testified that she and her husband were at Lester's home, 1310 Pater Avenue, on December 27, 2015, helping Lester and his wife, Bertha, get ready for a planned trip to Las Vegas beginning December 27 and returning December 31, 2015.

{¶ 32} Oddly, Lester handed Cheryl bills to hold while he was away, including bills for ADT home security, the home mortgage, insurance, and taxes. While they were walking around the home, both Cheryl and her husband noted that various items were missing from their usual locations in the home, including framed photographs of Cheryl and her sister and a cabinet containing various items that was "mostly empty." They had also noticed missing items when they were at the home a few days earlier on Christmas Eve.

{¶ 33} Cheryl recalled that Lester had packed a Nascar-branded duffel bag and took it with him to the airport. Cheryl also observed that the cellar doors were closed and padlocked with a small "goldish" lock. Later that day, Lester called Cheryl and told her that "in case anything happened" his "important stuff" was located in the detached garage next door to the home.

{¶ 34} Courtney Basinger testified that on December 27, 2015, Kim Brooks asked her to drive to from Hamilton to Richmond, Kentucky to retrieve William. For her services, Courtney would be compensated with gas money and oxycodone tablets. She understood that William was traveling to Hamilton to obtain the tablets. That evening, Courtney and Kim drove for two hours to Richmond and retrieved William. William had a gym bag with him when he entered the car. They then drove back to Hamilton.

{¶ 35} Once in Hamilton, William directed Courtney where to park. At approximately 12:41 a.m. on December 28, 2015, the vehicle was parked on Grand Boulevard near Allstatter Avenue and Pater Avenue. A detective estimated a distance of 541 feet between where Courtney stated she parked and the cellar doors to 1310 Pater Avenue. Courtney testified that William left the vehicle and walked by himself towards Pater Avenue. He turned onto the street and disappeared from her view. Courtney estimated that William was gone for approximately 20 minutes, however Courtney's cellular phone records indicated that she was stationary for approximately 11 minutes. When William returned he was breathing

heavily and was holding a metal gas can, something metal that looked like a padlock, and the gym bag. He gave Courtney the agreed upon number of Roxicet pills and they drove off.

{¶ 36} At 12:56 a.m. an ADT motion detector alarm was triggered at 1310 Pater Avenue. At 1:02 a.m., ADT dispatch contacted Hamilton police to notify them of the alarm. At 1:05 a.m., a Hamilton police officer was dispatched to the home. When the officer arrived he observed smoke coming from the home. He walked around the perimeter of the home and noted that the cellar doors were open. Investigators would later inspect the doors and find that it appeared that the fastening hardware had been pried off.

{¶ 37} Truck 25 of the Hamilton Fire Department subsequently arrived on scene. Patrick Wolterman was part of the Truck 25 crew. The crew, including Wolterman, made their initial entry into the home through the front door. Wolterman perished after the first floor of the home collapsed from fire damage and Wolterman fell through to the basement.

{¶ 38} At 3:15 a.m., William sent Linda Rose a Facebook message stating, "Babydoll, done with the job. Got to get some rest and call you tomorrow. Love you."

{¶ 39} Lester's daughter, Melissa Jones, saw a report of the fire on television and eventually arrived on the fire scene. She called Lester to alert him to the fire and he indicated he was aware of the fire and knew that a firefighter had been hurt. Melissa said he was angry with her for being there and told her to get away from the scene.

{¶ 40} From Las Vegas, Lester contacted his insurance agency to initiate a claim before the office had opened for the day.[1] Lester also contacted fire and police officials and indicated he would attempt to return home early from Las Vegas. He called his travel agent to inquire about booking a return trip. When the agent informed Lester he could book an

---

1. Lester's insurer paid him approximately $72,000 on expenses related to his loss claim before they ceased payments and sued him, asking a court to declare him in breach of his insurance contract for failure to cooperate with their loss investigation.

early flight for him and his wife for $375, Lester responded that the tickets were too expensive, and he did not book the flight. Lester later told his daughter Cheryl it would have cost him $2,700 to fly home early. Lester and Bertha continued their Las Vegas vacation and continued gambling, losing approximately $1,700 playing slot machines.

{¶ 41} Following the fire, and while still in Las Vegas, Lester made and received numerous telephone calls to various numbers associated with William's use including Stacy's cellular phone, William's mother's phone, and a pay phone that was located within walking distance of the Cove Motel in Hamilton on December 30, 2015. Since the fire, William and Kim had spent several days at various motels in the area and had stayed at the Cove Motel on December 29 and checked out December 30, 2015. Lester made some of these calls with an unregistered, pre-paid, cellular phone that he purchased at a pawn shop in Las Vegas on December 28, 2015.

{¶ 42} Lester and Bertha returned as planned on December 31, 2015. They temporarily moved into another residence. Cheryl visited them at this residence and noted the Nascar duffel bag that Lester had taken to the airport still had the airport baggage band attached and securing the handles. She opened the bag and found that it contained the framed photographs which she remembered had previously been on display prominently at 1310 Pater Avenue but had disappeared prior to the fire. During his testimony, Lester accused Cheryl of lying about the Nascar bag.

{¶ 43} Melissa testified that she was in jail several months after the fire and Lester visited her on at least one occasion. While discussing the death of Patrick Wolterman during his visit, Lester told her "I did not mean for that to happen." During his testimony, Lester claimed that Melissa lied concerning this confession.

{¶ 44} An ex-boyfriend of Melissa testified that in June 2015 he was helping Lester attach siding to the garage next to 1310 Pater Avenue and asked Lester about some

renovations that had occurred at 1310 Pater Avenue. Lester then told him that the renovations had occurred because there had been a fire and that he and his nephew had set the fire for insurance reasons.

**{¶ 45}** The lead investigator, Detective Fishwick, testified concerning his investigation. He was informed that Lester may have taken interior photographs of the home shortly before the fire. He asked Lester whether this was true; coincidentally, Lester said that he found some photographs of the interior of the home on his SD card and that he had taken the card to CVS to have the photographs developed. When the detective asked for the card, Lester provided it but said that the photographs had been deleted while at CVS. However, the detective confirmed that you could not delete images from an SD card using the CVS photograph-developing kiosk.

**{¶ 46}** The detective provided the SD card to a specialist who was able to recover the deleted photographs. These photographs depicted the interior living spaces of 1310 Pater Avenue and some were dated December 2015. By reviewing the photographs and comparing the items depicted to those items found after the fire and outside of the home, the detective was able to identify multiple unique items that had been removed from 1310 Pater Avenue prior to the fire.

**{¶ 47}** Another investigating detective testified that he interviewed William after the fire. William denied any involvement in setting the fire and specifically denied that he was in Hamilton at the time of the fire.

**{¶ 48}** Eventually, Lester and his wife moved into 1304 Pater Avenue, which was previously Lester's rental property. When police executed a search warrant at the property, they found multiple items and mementos that had been in 1310 Pater Avenue prior to the fire and were now on display at 1304 Pater Avenue.

{¶ 49} Based upon the foregoing, and when viewing the evidence in a light most favorable to the prosecution, the state provided sufficient evidence to allow reasonable factfinders to determine beyond a reasonable doubt that Lester planned the arson and conspired with William to accomplish the arson, with the purpose of collecting insurance proceeds. This court overrules Lester's second assignment of error.

{¶ 50} Assignment of Error No. 3:

{¶ 51} THE TRIAL COURT PLAINLY ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF SIMPLE ARSON AND INVOLUNTARY MANSLAUGHTER IN VIOLATION OF PARKER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

{¶ 52} Lester argues that the court plainly erred in failing to, sua sponte, instruct the jurors on the lesser included offenses of arson as set forth in R.C. 2909.03(A)(2) and (A)(4). Lester further argues that because arson under R.C. 2909.03 is at most a third-degree felony and could not support a count of felony murder, the court should have instructed the jury on the lesser offense of involuntary manslaughter.[2]

{¶ 53} In considering whether to instruct a jury on lesser offenses, a trial court must first determine whether an offense is a lesser included offense of the crime charged. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. If that inquiry is answered affirmatively, then the court must proceed to determine whether the evidence in the case supports an instruction on the lesser included offense. *Id.*

{¶ 54} The test for determining if an offense is a lesser included offense of another crime is "whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and

_____

2. Felony murder pursuant to R.C. 2903.02(B) requires an underlying offence of violence that is a felony of the first or second degree.

whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *Id.* at ¶ 26. The state concedes that the first two prongs of the test are met in this case. This court will therefore review whether aggravated arson, pursuant to R.C. 2909.02(A)(1) and (A)(2) cannot be committed without also committing arson as defined by R.C. 2909.03(A)(2) and (A)(4).

{¶ 55} Aggravated arson as defined by R.C. 2909.02 provides:

> (A) No person, by means of fire or explosion, shall knowingly do any of the following:
>
>> (1) Create a substantial risk of serious physical harm to any person other than the offender;
>>
>> (2) Cause physical harm to any occupied structure;

Arson as defined by R.C. 2909.03 provides:

> (A) No person, by means of fire or explosion, shall knowingly do any of the following:
>
>> (2) Cause, or create a substantial risk of, physical harm to any property of the offender or another, with purpose to defraud;
>>
>> * * *
>>
>> (4) Cause, or create a substantial risk of, physical harm, through the offer or the acceptance of an agreement for hire or other consideration, to any property of another without the other person's consent or to any property of the offender or another with purpose to defraud;

{¶ 56} To prove subsection (A)(1) of the aggravated arson statute, the state must demonstrate that the offender caused a substantial risk of serious physical harm to another person. However, the state does not also need to prove that the offender caused or created a substantial risk of physical harm to any property with purpose to defraud, which is required of an arson conviction under the (A)(2) or (A)(4) subsections. Accordingly, aggravated arson

under R.C. 2909.02(A)(1) can be committed without also committing arson under either R.C. 2909.03(A)(2) or (A)(4).

{¶ 57} To prove subsection (A)(2) of the aggravated arson statute, the state must prove that the offender caused physical harm to any occupied structure. However, the state is not also required to prove a purpose to defraud, as required to obtain a conviction for arson under R.C. 2909.03(A)(2) or (A)(4). Thus, an offender could commit a violation of aggravated arson under R.C. 2909.02(A)(2) but do so without a purpose to defraud and therefore not violate R.C. 2909.03(A)(2) or (A)(4). Therefore, aggravated arson under R.C. 2909.02(A)(2) could be committed while not also committing arson under either R.C. 2909.03(A)(3) or (A)(4). In sum, arson offenses under R.C. 2909.03(A)(2) or (A)(4) are not lesser included offenses of aggravated arson offenses under either R.C. 2909.02(A)(1) or (A)(2).

{¶ 58} In addition, a defendant is only entitled to a lesser included offense instruction if the evidence submitted at trial would support an acquittal on the offense charged and support a conviction on the lesser included offense. Stated otherwise, a lesser included offense instruction is only warranted "[i]f the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense * * *." *State v. Kilby*, 50 Ohio St.2d 21, 24-25 (1977).

{¶ 59} For the violation of R.C. 2909.02(A)(1), the state had to prove that the fire caused a substantial risk of serious physical harm to any person. In this regard, the evidence was undisputed that Patrick Wolterman died from the effects of the fire and thus suffered serious physical harm. For the violation of R.C. 2909.02(A)(2), the state had to prove physical harm to any occupied structure. It was also undisputed that the fire caused

considerable physical damage to Lester's home. Thus, the evidence submitted at trial would not support an acquittal on the counts of aggravated arson.

{¶ 60} Because the aggravated arson instruction was appropriate, there is no merit to the argument that Lester was entitled to an instruction on involuntary manslaughter. Lester has demonstrated neither error nor plain error. This court overrules Lester's third assignment of error.

{¶ 61} Assignment of Error No. 4:

{¶ 62} APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO REQUEST JURY INSTRUCTIONS FOR THE LESSER INCLUDED OFFENSES OF SIMPLE ARSON AND INVOLUNTARY MANSLAUGHTER.

{¶ 63} Lester argues that if this court does not find plain error in response to his third assignment of error then, alternatively, this court should find that his trial counsel rendered constitutionally deficient performance for not having requested lesser included instructions on arson and involuntary manslaughter.

{¶ 64} A convicted defendant alleging ineffective assistance of counsel must demonstrate that (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced the defendant, depriving him or her of a trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984).

{¶ 65} This assignment of error is meritless for the reasons set forth in the previous assignment of error. Lester cannot demonstrate that his counsel was deficient for failing to request a lesser included instruction to which he was not entitled. This court overrules Lester's fourth assignment of error.

{¶ 66} Assignment of Error No. 5:

{¶ 67} PARKER WAS DENIED HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN THE PROSEUCTION COMMITTED ACTS OF MISCONDUCT DURING VOIR DIRE, TRIAL, AND CLOSING ARGUMENTS.

{¶ 68} Lester argues that the state committed misconduct when, during voir dire, the prosecutor used a puzzle analogy to explain reasonable doubt and used an analogy involving destroying a structure with dynamite to explain circumstantial evidence. Lester further argues that the state committed misconduct by allegedly coaching a witness' testimony, encouraging false testimony from another witness, and commenting on Lester's wife's failure to testify in his defense. Finally, Lester argues that the prosecutor committed misconduct during closing argument by referring to facts that were not in evidence. Lester concedes that he did not object to every claimed instance of prosecutorial misconduct and therefore the standard of review in those instances would be plain error.

{¶ 69} To demonstrate that the state deprived him of a fair trial, Lester must establish that the prosecutor's comments or actions were improper and prejudicially affected his substantial rights. *See State v. Elmore*, 111 Ohio St. 3d 515, 2006-Ohio-6207, ¶ 62. In making such a determination, the focus is upon the fairness of the trial, not upon the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant can establish that he has been denied a fair trial because of the prosecutor's actions. *See State v. Smith*, 12th Dist. Warren No. CA2017-02-013, 2017-Ohio-7540, ¶ 29.

Voir Dire

{¶ 70} Lester argues that the state committed misconduct when the prosecutor attempted to explain the concept of proof beyond a reasonable doubt to the venire by

analogizing it to completing a jigsaw puzzle. Lester did not object to the prosecutor's analogy.

{¶ 71} The Ohio Supreme Court has found that a prosecutor's comments comparing crossing a bridge to help explain proof beyond a reasonable doubt were "perhaps inappropriate" but found that the defendant had not demonstrated prejudice and noted that the trial court had negated any misconception by properly instructing the jury on reasonable doubt. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 79.

{¶ 72} This court agrees that best practice in discussing the state's burden of proof with the venire would be to avoid anecdotes or analogies that stray from the language used in the standard jury instructions. Therefore, the prosecutor's remarks were perhaps inappropriate. However, Lester cannot demonstrate a changed outcome from these brief comments during voir dire. The trial court properly instructed the jury on the reasonable doubt standard and Lester was convicted on substantial evidence of his guilt.

{¶ 73} Lester also argues that the state committed misconduct when the prosecutor attempted to explain circumstantial evidence by describing a scenario involving an individual going into a barn, exiting the barn with a pack of matches, and the barn is subsequently destroyed by a dynamite explosion. Although William objected to the statement, Lester did not and is again limited to a review for plain error. *See State v. Crosky*, 10th Dist. Franklin No. 06AP-816, 2007-Ohio-6533, ¶ 23, fn. 3 (holding that a codefendant's objection does not preserve an error for appeal). Lester argues that because this was an arson case, the facts in the dynamite analogy were too similar and amounted to the state attempting to indoctrinate the jury pool.

{¶ 74} After the prosecutor discussed the dynamite hypothetical, William's counsel objected, and a sidebar discussion occurred. To alleviate William's counsel's concerns, the prosecutor, upon returning to the venire, clarified that the case would not involve dynamite

and that dynamite story was a hypothetical to test whether any venireperson would have any concerns with considering circumstantial evidence.

{¶ 75} This court does not find that these comments deprived Lester of a fair trial. The analogy by the prosecutor was perhaps objectionable based on a potential similarity to the underlying facts of the case, and the state seemed to concede this point by immediately offering a clarifying remark. The trial court properly instructed the jury on circumstantial evidence and this court presumes that the jurors followed those instructions. *Vunda*, 2014-Ohio-3449 at ¶ 73.

Presentation of Evidence

{¶ 76} Lester claims that the state committed misconduct by "coaching" a witness' testimony. On the first day of the trial, Hamilton firefighter Ben Adams testified that he entered the first floor of the home through a rear door, which was unlocked, and he did not recall having to force the door open. The next witness, a fire investigator who arrived on the fire scene later, testified that Adams told him that the door had to be forced open.

{¶ 77} On the second day of trial, the state called another firefighter, Joseph Geis, who also made entry into the home. Geis testified that he broke the glass window of the rear door and reached in and unlocked the door. On cross-examination, Geis admitted that he spoke with the prosecutor about the factual discrepancy between the two witnesses.

{¶ 78} Lester argues that the prosecutor improperly "coached" Weis' testimony by informing him of the conflicting testimony on the previous day. This argument lacks merit. Preparing a witness for trial is not improper coaching and there is no support in the record for the contention that Geis provided false testimony, which is the implication of Lester's argument. Defense counsel thoroughly cross-examined Geis concerning the extent of his contact with the prosecutor prior to his testimony. This cross-examination merely drew out

that the prosecutor had informed Geis of the earlier conflict in testimony, which he was able to reasonably explain.

{¶ 79} Next, Lester claims that the state committed misconduct by "encouraging false testimony" from Kim Brooks. At trial, Kim, who was not called by the state, denied that William had a gym bag or anything else in his hands when he returned to Courtney's vehicle. On cross-examination, Kim claimed that the lead detective and assistant prosecutor had "badgered" her before trial about whether William had a bag with him when he returned to the vehicle. This argument is also meritless. There is no impropriety in the state's representatives questioning Kim as to her knowledge of facts in an arson and murder investigation. Thorough police questioning of a reluctant witness does not equate with "encouraging false testimony."

{¶ 80} Next, Lester argues that the prosecutor committed misconduct by repeatedly asking him whether his wife would testify in his defense. Lester argues that this was the state's improper commentary on his right to invoke the spousal privilege pursuant to R.C. 2945.42, which Lester likens to his Fifth Amendment privilege.

{¶ 81} On cross-examination, the prosecutor asked Lester whether his wife would testify and corroborate his testimony. Lester's counsel objected, and the trial court sustained the objection, instructing the jury to disregard the question. Later during the cross-examination, the prosecutor again asked whether Lester's wife would testify. Lester's counsel did not object and Lester responded negatively. Subsequently the prosecutor asked for a third time whether Lester's wife would testify and Lester responded that he did not know and was not asking her to testify for him. Again, Lester's counsel did not object.

{¶ 82} There is no indication in the record that Lester invoked the spousal privilege and Lester does not cite any controlling authority holding that it is a violation of an individual's right to a fair trial for the state to comment on a spouse's failure to testify. Nonetheless, this

court finds that the prosecutor's questioning was improper after the trial court sustained the objection. However, this court does not find that Lester was deprived of a fair trial or that his defense was in any way prejudiced by the comments. Lester was convicted on substantial evidence of his guilt and this court cannot find any likelihood of a changed outcome simply because of these brief comments. Therefore, this court finds such improper questioning only resulted in harmless error.

Closing Argument

{¶ 83} Finally, Lester argues that the prosecutor committed misconduct during closing argument based on two comments that Lester contends were unsupported by evidence. Specifically, the prosecutor stated that smoke from the arson fire must have set off the security system motion detectors in the home and that Stacy had "distanced" himself from his family.

{¶ 84} Either of these comments were logical inferences based upon the evidence in the record. The evidence indicated that the fire was producing smoke and it is a reasonable assumption that smoke or heat could set off motion detectors. As to his other argument, Stacy testified that he hardly spoke with Lester, thus the comment about him distancing himself from the family had some basis. Regardless, Lester fails to explain how either of these two statements caused him any prejudice and deprived him of a fair trial. Accordingly, this court overrules Lester's fifth assignment of error.

{¶ 85} Assignment of Error No. 6:

{¶ 86} THE CUMULATIVE EFFECT OF ERROR PERPETRATED IN THE LOWER COURT THROUGHOUT PROCEEDINGS DEPRIVED PARKER OF HIS RIGHT TO A FAIR TRIAL.

{¶ 87} Lester argues that the cumulative effect of combined errors that occurred deprived him of a fair trial. In the context of this assignment of error, Lester claims two

additional errors in the admission of evidence. The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 26. Absent an abuse of discretion, this court will not reverse the trial court's decision to admit or exclude relevant evidence. *Id.*

{¶ 88} Lester claims that the trial court abused its discretion by allowing Melissa's ex-boyfriend's testimony concerning Lester admitting that he had previously set a fire to collect insurance money. Over objection, the trial court permitted the testimony, finding that it was admissible pursuant to Evid.R. 404(B). This court finds that the trial court acted within its discretion. The statement was admissible as non-hearsay pursuant to Evid.R. 801(D)(2) and relevant to modus operandi and admissible under Evid.R. 404(B).

{¶ 89} Lester also claims that the court erred in admitting evidence of his gambling history while in Las Vegas. Again, this court finds that the trial court acted within its discretion in admitting the testimony. Given Lester's poor financial state, his willingness to gamble was marginally probative of his scheme to collect insurance proceeds from the arson.

{¶ 90} Because this court finds no merit to any of Lester's assigned errors, he cannot demonstrate cumulative error. This court overrules Lester's sixth assignment of error.

{¶ 91} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.