[Cite as *State v. Grevious*, 2019-Ohio-1932.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-05-093 |
| | : | O P I N I O N |
| - vs - | | 5/20/2019 |
| | : | |
| MICHAEL T. GREVIOUS, II, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-08-1134


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Koenig & Long, LLC, Charles A. Koenig, 5354 North High Street, Columbus, Ohio 43214, for appellant


**PIPER, J.**

{¶ 1} Appellant, Michael Grevious, appeals his conviction in the Butler County Court of Common Pleas for aggravated murder.

{¶ 2} On July 24, 2016, an altercation occurred at Doubles Bar between members of the Gilbert family and a rival group. The altercation escalated into a gunfight during which eight people were shot, including Orlando Gilbert. Kalif Goens was also shot and died from

his injuries. Grevious was present at Doubles Bar on the night of the shootout and knew Goens well as the son of his father's girlfriend.[1]

{¶ 3} On the afternoon of August 3, 2016, Zachary Harris and two conspirators, Tony Patete and Melinda Gibby, drove in a populated area searching for the vehicle driven by Orlando. The three located Orlando's vehicle, and began following him. The three then pulled beside Orlando's car and shot him and his passenger, Todd Berus, with an AK-47 automatic rifle. Orlando was killed instantly and Berus perished shortly thereafter. Harris, Patete, and Gibby fled and engaged police on a chase, each separately captured by police.[2]

{¶ 4} The investigation that followed revealed that Grevious hired Harris to kill Orlando in retaliation for Goens' death, that Harris had tried and failed on multiple occasions to locate Orlando in order to kill him, and that Grevious orchestrated and pursued Harris' execution of Orlando through hundreds of phone calls and text messages in the days between the shooting at Doubles Bar and the ultimate killing of Orlando and Berus.

{¶ 5} The investigation also uncovered that on July 24, 2016, Grevious fired shots at a member of the Gilbert family, Jariaus, on the night of the shootout at Doubles Bar. In regard to that investigation, Grevious was charged with felonious assault for shooting at Jariaus and having weapons under disability, along with a firearm specification. In regard to the homicide of Orlando on August 3, 2016, Grevious was charged with aggravated murder that carried a death penalty specification by which the state alleged that Grevious committed murder-for-hire, along with an additional firearm specification.

{¶ 6} Grevious pled not guilty to the charges and the matter proceeded to an eight-day jury trial. Before the trial began, Grevious moved the court to sever the charges against

---

1. The record indicates that Grevious referred to Goens as his brother.

2. All three pled guilty to two counts of aggravated murder and received life sentences.

him so that he could be tried separately for the aggravated murder and felonious assault charges. The trial court overruled Grevious' motion, finding that the indicted charges were connected because the events of the shootout at Doubles Bar led to Orlando's death. The trial court also overruled Grevious' motion to suppress a photographic lineup identification of him by a woman the police interviewed during the investigation.

{¶ 7} A jury found Grevious guilty of aggravated murder, but not guilty of the felonious assault and having weapons under disability charges. The jury recommended imposing a life sentence rather than the death penalty, and the trial court imposed the suggested life sentence without the possibility of parole. Grevious now appeals his conviction, raising six assignments of error.[3] For ease of discussion, we will address the assignments of error out of order.

{¶ 8} Assignment of Error No. 4:

{¶ 9} THE EVIDENCE ADDUCED AT TRIAL IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT APPELLANT'S CONVICTION ON THE CHARGE OF AGGRAVATED MURDER COMMITTED FOR HIRE.

{¶ 10} In his fourth assignment of error, Grevious argues that his conviction for aggravated murder was not supported by sufficient evidence.

---

3. Grevious also suggests that this court deprived him of due process by imposing a page limit on his appellate brief. This court normally imposes a 20-page limit on appellate briefs according to Loc.R. 11(A)(3). However, this court, within its discretion, granted Grevious' request for extra pages, and permitted him 40 pages to present his arguments, thus doubling the normal page limit. That 40-page allowance was 40 full pages in which Grevious could present his arguments, exclusive of the brief formalities required by our court including a table of contents, table of cases and authorities, assignments of error and issues presented for review, and appendices. Notwithstanding that fact, Grevious argues that he was not able to present all the reasons his conviction should have been reversed given the space limits. However, the Ohio Supreme Court has already determined that page limits are constitutional, specifically finding that 40 pages was a reasonable number of pages to provide appellants the ample opportunity to concisely present arguments. *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St. 3d 10, 22 (1993). That this court requires appellants to be succinct does not amount to a denial of due process. This is especially true where Grevious, who was in complete control of how to use his 40 pages of argument, dedicated several pages to already-settled areas of law, half of a page to reiterating the number of assignments of error he would be discussing in his brief, 13 pages to reviewing procedural posture and facts, and half of another page to reviewing what mitigating factors were presented during the sentencing phase despite this court's inability to review the sentence. These pages were utilized as such, by his own choice, in lieu of raising what Grevious speculates were potentially meritorious arguments.

{¶ 11} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Krieger*, 12th Dist. Warren No. CA2017-12-167, 2018-Ohio-4483. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 12} Grevious was convicted of complicity to aggravated murder in violation of R.C. 2903.01(A), which provides, "no person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." R.C. 2929.04(A)(2) establishes murder-for-hire as a ground for imposing a death penalty specification to an aggravated murder charge. A murder-for-hire is proved by evidence of compensation or some remuneration being offered. *State v. Lindsey*, 87 Ohio St.3d 479 (2000).

{¶ 13} Complicity requires the defendant to have solicited or procured another to commit the underlying offense, aided and abetted another in committing the underlying offense, or conspired with another to commit the offense that was actually committed. R.C. 2923.03(A) and (C). To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *State v. Gragg*, 173 Ohio App.3d 270, 2007-Ohio-4731, ¶ 20 (12th Dist.). Evidence of aiding and abetting may be shown by direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before or after the offense is committed. *Id.*

{¶ 14} During the trial, the state presented sufficient evidence to support Grevious'

- 4 -

conviction for aggravated murder and the murder-for-hire specification. Grevious and Harris, who knew each other from time spent in the same jail, exchanged numerous phone calls and text messages between the time of the shooting at Doubles Bar and Orlando's murder. Along with other evidence, the cellular phone and text message records demonstrate that Grevious was complicit in the premediated murders and that Grevious paid Harris for committing the murders.

{¶ 15} The state provided evidence from Harris' phone records in addition to data that demonstrated the location of each man as they communicated with each other and as they met at various locations while planning the murder. During that time frame, Grevious and Harris exchanged hundreds of phone calls and text messages. The text messages ended the night before the murder, with Grevious instructing Harris to "delete everything." The day after Orlando was killed, Grevious terminated his cellular phone plan.

{¶ 16} Through the phone records and text messages, the state produced evidence that Grevious supplied Harris with a description of Orlando's car, and gave Harris Orlando's location numerous times to facilitate the murder. On one occasion, Harris texted Grevious to ask where Orlando was currently located and Grevious answered, "Yeah, he out in the hood." Harris responded, "Oh, yeah, we got him. * * * Yeah, it over." Grevious also called and sent text messages to Harris, especially after Harris failed to kill Orlando on earlier occasions, demanding Orlando's homicide must take place, and demeaning Harris for his previous failures to locate and kill Orlando. For example, after one failed attempt, Grevious demanded that Harris "come back here" and told Harris, "you just spit in my face." Grevious also texted, "Damn Z I ain't never know ya for playing me, brah. * * * I need ya, bro. * * * I'm not even tripping. I just need that shit done." During a later text message exchange, in which Harris promised to complete the job, Grevious responded to Harris, "I need this to happen. * * * We need it brah. Just come 'cause n***as looking at me like I'm on some bullshit."

{¶ 17} In addition to the phone records and text messages, the jury heard testimony from a woman and man Harris hired to drive to Hamilton from Columbus so that he could meet with Grevious and receive payment for the killing. The two testified that Harris hired them to drive to Hamilton where Harris "had a job to do" and "was going to pick up money from his friend." According to their testimony, the only person they saw Harris meet that evening was Grevious. At one point, the woman could hear Harris and Grevious speaking as they were standing outside of her car where she sat in the driver's seat. The woman testified that she heard Grevious say to Harris, "you'll get the rest once it's handled." After the meeting, Harris paid the woman and man $1,250.00, and he texted a friend that he had just been paid "bands," which is a slang word for one thousand dollars.

{¶ 18} The state also presented evidence that during the time before the execution was completed, Kalif Goens' brother made a recorded telephone call from jail in which he expressed displeasure that Orlando had not yet been killed. During that phone call, Goens's brother stated, "I thought he been paid * * * I thought their ticket was paid." The state also presented evidence that mere minutes after Orlando was killed, Grevious suggested meeting Harris at the motel to "get paid the rest of the money."

{¶ 19} Harris' co-conspirator, Melinda Gibby, also testified for the state. Gibby testified that Grevious directed her, Harris, and Patete's actions during the hours preceding Orlando's death. Grevious told the team which motel to stay in, and she recounted the various attempts made that day to kill Orlando after Grevious advised Harris of Orlando's location. After the team was unable to locate Orlando that evening, they went back to the motel and waited for word from Grevious. Gibby testified that on the morning of the murders, Grevious told Harris that Orlando was "taunting him, laughing and taunting him," and that they had to "get this job taken care of." Grevious then directed the team to the location where they ultimately began following Orlando in his car, killing him within a short time.

{¶ 20} This evidence, especially when viewed in a light most favorable to the prosecution, demonstrates that Grevious clearly supported, assisted, encouraged, cooperated with, advised, and incited Harris in the commission of Orlando's premeditated murder, and that he shared Harris' criminal intent. Moreover, the evidence also demonstrates that Harris received renumeration for his part in the murder from Grevious so that the murder-for-hire specification was also supported by sufficient evidence. Grevious' fourth assignment of error is therefore, overruled.

{¶ 21} Assignment of Error No. 1:

{¶ 22} APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AS A CONSEQUENCE OF THE TRIAL COURT'S FAILURE TO SEVER THE FELONIOUS ASSAULT CHARGE FROM THE AGGRAVATED MURDER CHARGE AT TRIAL.

{¶ 23} Grevious argues in his first assignment of error that the trial court erred by denying his motion to sever.

{¶ 24} The law favors joining multiple offenses in a single trial pursuant to Crim.R. 8(A) if the offenses charged are of the same or similar character. *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739, ¶ 13. However, a defendant may move to sever the offenses pursuant to Crim.R. 14 where it appears that joinder would be prejudicial. *State v. Rose*, 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 12. The accused bears the burden of proving that prejudice. *State v. Parker*, 12th Dist. Butler No. CA2017-12-176, 2019-Ohio-830, ¶ 12.

{¶ 25} The decision to grant or deny a motion to sever is a matter in the trial court's discretion, and therefore, we review the trial court's decision using an abuse of discretion

standard. *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 35. "An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *Rose* at ¶ 11.

{¶ 26} While the defendant bears the burden of proving prejudicial joinder, the state may rebut a defendant's claim of prejudice by utilizing one of two methods. *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 79. Initially, pursuant to the "other acts test," the state may rebut the defendant's claim of prejudice by demonstrating it could have introduced evidence of the joined offenses at separate trials pursuant to the "other acts" provision found in Evid.R. 404(B). *State v. Coley*, 93 Ohio St.3d 253, 259 (2001). On the other hand, the state may separately negate a claim of prejudice by satisfying the less stringent "joinder test," which requires the state to merely demonstrate "that evidence of each crime joined at trial is simple and direct." *Moshos* at ¶ 79. The joinder test only requires that the evidence of each joined offense is simple and distinct and ensures that a jury would be capable of segregating the proof required for each offense. *State v. Morsie*, 12th Dist. Warren No. CA2012-07-064, 2014-Ohio-172.

{¶ 27} "A showing by the state that the evidence relating to each crime is simple and direct negates any claims of prejudice and renders joinder proper." *State v. Bice*, 12th Dist. Clermont No. CA2008-10-098, 2009-Ohio-4672, ¶ 53. Thus, if the state can meet the joinder test, it need not meet the stricter "other acts" test. *State v. Johnson*, 88 Ohio St.3d 95, 109 (2000). An accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶ 28} Grevious alleges that the trial court erred in not severing the charges against him. However, the record demonstrates that the trial court did not abuse its discretion where the offenses charged were connected and the evidence relating to each of the charged

crimes was simple and direct.

{¶ 29} As the trial court noted, the two charges stemmed from instances that were connected to constitute part of the same scheme, plan, or criminal conduct. Specifically, the state presented evidence of the shooting at Doubles Bar and Goens' murder as the motive for Grevious hiring Harris to kill Orlando. The evidence related to the felonious assault charge would also show that Grevious participated in the shootout against the Gilberts by shooting at Jariaus, and that he was present when Goens was shot by someone associated with the Gilberts.

{¶ 30} The evidence was also simple and direct regarding both charges. The evidence specific to the felonious assault charge was that an eyewitness had seen Grevious shoot at Jariaus on the night of the shoot out at Doubles Bar. Separate from that charge and its underlying evidence, the state presented evidence that Grevious was complicit in aggravated murder because he arranged Orlando's murder by hiring Harris. The evidence was not confusing or difficult to understand, even though it was voluminous in regard to text messages, phone records, and the like.

{¶ 31} Even then, the trial court gave a specific jury instruction that the multiple charges from the indictment were separate and distinct from each other. The trial court further explained to the jury that it had to make separate findings as to each count, uninfluenced by any other charge. This instruction, and the other reasons noted above, demonstrate that Grevious suffered no prejudice from being tried for multiple crimes during the same trial. *See State v. Shouse*, 12th Dist. Brown No. CA2013-11-014, 2014-Ohio-4620, ¶ 30 (the jury is presumed to follow jury instructions).

{¶ 32} Grevious argues in his brief that the state charged both crimes in an attempt to "place in the jurors' minds that Appellant has a propensity for retaliatory conduct and a prior felony conviction for violence." However, there is no indication in the record that the jury was

persuaded by the felonious assault and having weapons under disability charges to find Grevious guilty of aggravated murder. Instead, the record clearly demonstrates that the jury understood what evidence was directed at what charge, and it clearly weighed the evidence separately as the trial court instructed it to do.

{¶ 33} The jury's verdict demonstrates that it believed the state failed to prove beyond a reasonable doubt that Grevious was guilty of felonious assault and having weapons under disability. Thus, by its finding that the state failed in its burden of proof, the jury was not impassioned so as to lose its commitment to weigh the evidence, follow the trial court's instructions of law, and decide the charges separately. Grevious acknowledged at oral argument that many of the facts and circumstances from the shootout at Doubles Bar would have been admissible at a trial on the aggravated murder charge if the charges had been tried separately. As such, the trial court did not commit an abuse of discretion by not severing Grevious' charges, and his first assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} APPELLANT WAS DENIED A FAIR AND IMPARTIAL TRIAL WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE OF THE MURDERS OF ORLANDO GILBERT AND TODD BERUS, WHICH WAS OF LITTLE OR NO PROBATIVE VALUE AND WAS OVERWHELMINGLY PREJUDICIAL TO APPELLANT.

{¶ 36} Grevious argues in his second assignment of error that the trial court erred in permitting the state to present evidence of Orlando Gilbert's and Todd Berus' murders as committed by Harris and his two accomplices.

{¶ 37} Grevious did not object at trial to the evidence he now claims was erroneously admitted and has thus waived all but plain error on appeal. *State v. McNeil*, 12th Dist. Warren No. CA2018-09-115, 2019-Ohio-1200. To constitute plain error, the error must be

obvious and is justiciable only when the outcome of the trial would have been different without the error. *State v. Yanez*, 12th Dist. Butler No. CA2016-10-190, 2017-Ohio-7209. Review of plain error is made with utmost caution and only to prevent a manifest miscarriage of justice. *Id.*

{¶ 38} The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 26. Absent an abuse of discretion, this court will not reverse the trial court's decision to admit or exclude relevant evidence. *Id.* According to Evid.R. 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶ 39} Grevious claims that the jury should not have heard any evidence regarding the drive-by shooting nor should it have seen photographs of the crime scene because such was irrelevant and prejudicial. However, and according to R.C. 2923.03(B), "no person shall be convicted of complicity under this section unless an offense is actually committed." As such, the state had to prove that the underlying offense, aggravated murder, was actually committed. Evidence of Orlando's murder with prior calculation and design was therefore required, and the state used the now-challenged evidence to carry its burden of proof.

{¶ 40} To demonstrate the prior calculation and design, the state presented evidence of Harris and his conspirators planning the killing, shooting Orlando and Berus with the AK rifle, and the events that unfolded after the murders regarding the conspirators fleeing and attempting to avoid capture. Grevious argues that presenting evidence of these facts was meant to "plant in [the jurors'] minds the urge to punish someone for the crime." However, the jury heard directly from Gibby during her testimony that she was sentenced to life for her part in the crime. Thus, the jury was well aware that punishment had, in fact, been rendered

for Orlando's and Berus' murders.

{¶ 41} To further support the precalculated nature of the homicides, the state presented evidence that Harris came from Columbus to Hamilton with the AK rifle, purchased ammunition while in the area, and that the bullets fired from the rifle killed Orlando and Berus. The state showed photographs of Orlando's body to prove that the bullets fired that day entered his body, causing his death. Despite Grevious' contention that the state was simply "piling" on evidence to "evoke reactions of disgust and outrage from the jurors," the record demonstrates that these photographs were not repetitive, overly gruesome, or voluminous in nature.

{¶ 42} The state also presented testimony from eyewitnesses who observed the homicides. However, the witnesses did not testify to any gruesome details, and instead, testified to seeing the truck pulling along side of Orlando's car, the gun being fired into the car, and that both Orlando and Berus appeared deceased when the eyewitnesses tried to render aid. While Grevious claims that this evidence was "excessively cumulative," the testimony supported the state's assertions that the homicides were purposeful and calculated, and that Orlando and Berus were killed as a result.

{¶ 43} The trial court did not commit error, plain or otherwise, in permitting the state to address the murders of Orlando and Berus, or in admitting any evidence relevant to the fact that the aggravated murders occurred. Grevious' second assignment of error is therefore, overruled.

{¶ 44} Assignment of Error No. 3:

{¶ 45} THE TRIAL COURT ERRED BY FAILING TO EXCLUDE [A WITNESS'] IDENTIFICATION OF APPELLANT IN A PHOTO ARRAY LINE-UP, AS UNRELIABLE AND IRREPARABLY MISLEADING AS A RESULT OF IMPERMISSIBLY COERCIVE AND SUGGESTIVE TACTICS EMPLOYED BY LAW ENFORCEMENT DURING PRESENTATION

OF THE PHOTO ARRAY.

{¶ 46} Grevious argues in his third assignment of error that the trial court erred in denying his pretrial motion to suppress the identification made of him by a state's witness during a photographic lineup.

{¶ 47} To seek suppression of a photographic lineup, a defendant must argue that the procedure of the lineup did not comply with R.C. 2933.83 and that the lineup was a violation of his constitutional rights. *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 29. R.C. 2933.83(B) requires law enforcement agencies that conduct lineups to adopt specific procedures for conducting the lineups and to comply with minimum requirements outlined in the statute such as blind administration of the lineup by one who does not know the identity of the purported suspect. Due process requires a court to suppress a witness' identification of the suspect if the identification process was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. *State v. Waddy*, 63 Ohio St.3d 424 (1992).

{¶ 48} Grevious argues that the trial court erred in permitting evidence of a photographic lineup because such was performed in a suggestive manner and through coercive behavior on the part of the detectives who administered the lineup. During her testimony, the woman who drove Harris to Hamilton to meet with Grevious testified that detectives came to her home and presented a photographic lineup to determine if she could identify the man that met with and talked to Harris. The woman chose the picture of Grevious and identified him as the man who met with Harris that night. After the woman made her identification, detectives referred to Grevious by both his nickname, Skitzo, and his legal name, Michael Grevious, at some point during the remainder of their interview with her. Grevious now asserts that the detectives using his names with the woman made her identification of him invalid. That assertion is not supported by the record.

{¶ 49} The record indicates that the proper procedures were followed by detectives when they interviewed the woman and as she made her identification of Grevious from the photographic lineup. Regardless of whether the woman knew Grevious' legal or nickname, she was able to choose his photograph from the lineup and confirmed that the man in the photograph was the man with whom Harris met and spoke to on the night she drove Harris to Hamilton. The fact that detectives used Grevious' legal and nickname *after* the woman made her identification is wholly irrelevant to whether the photo lineup was properly administered.

{¶ 50} This is especially true where the woman testified at trial that she knew Grevious' name from watching the news in the days following the double murders. While Grevious claims that the woman only knew his name after being informed by law enforcement, the record clearly demonstrates that the woman learned Grevious' name from other sources before the detectives spoke to her. Regardless, and as noted above, the detectives did not raise Grevious' name until after the woman identified his photograph from the lineup as the man with whom Harris met.

{¶ 51} Also irrelevant to the lineup identification is Grevious' contention that the detectives coerced the woman by threatening that she could either be a witness or a defendant in criminal proceedings that resulted from the homicide investigation. As long-held by the Ohio Supreme Court, "admonitions to tell the truth" are not considered coercive because "officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 111.

{¶ 52} There is no indication in the record that the photographic lineup was rendered invalid by detectives' suggestion that the woman cooperate or by hearing Grevious' names after making her identification. As such, Grevious' third assignment of error is overruled.

{¶ 53} Assignment of error No. 5:

{¶ 54} APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AS A CONSEQUENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 55} Grevious argues in his fifth assignment of error that he was denied effective assistance of counsel for his trial counsel's deficient conduct before and during trial.

{¶ 56} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id. at 694.*

{¶ 57} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 58} Grevious argues that his trial counsel was ineffective for failing to pursue a motion to suppress and failing to object to the evidence regarding the murders of Orlando and Berus.

{¶ 59} Grevious filed a pretrial motion to suppress because his phone was seized during execution of a search warrant. During a hearing on pretrial motions, counsel informed the court that he had since learned that the phone was seized during a search of the home

belonging to Grevious' father so that Grevious lacked standing to challenge the search warrant. Counsel therefore withdrew the motion to suppress.

{¶ 60} Grevious' counsel was correct in withdrawing the motion, as Grevious lacked standing to challenge the search of his father's home. Fourth Amendment privacy rights are "personal rights," which may not be "vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421 (1978). As such, a person who alleges error using evidence taken from someone else's property cannot claim that his own rights have been violated. *State v. Coleman*, 45 Ohio St.3d 298 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Thus, in order to challenge a search or seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such expectation. *State v. Renner*, 12th Dist. Clinton No. CA2002-08-033, 2003-Ohio-6550.

{¶ 61} The hearing transcript clearly demonstrates that Grevious fully admitted that the search warrant was executed at his father's residence, and Grevious stated that he did not live with his father. Thus, trial counsel was not ineffective for withdrawing the motion to suppress where Grevious had no standing to challenge it.

{¶ 62} Regarding his second claim that his counsel was ineffective for not objecting to the evidence related to Orlando's and Berus' murders, we have already determined that the trial court did not err in admitting the evidence. As such, Grevious cannot demonstrate that his counsel's objections to the evidence would have been sustained or that the results of his trial would have been different.

{¶ 63} The record shows an overwhelming amount of evidence of Grevious' guilt, and nothing he claims now as the basis for ineffective assistance of counsel would have made any difference in the jury's verdict. As such, Grevious' fifth assignment of error is overruled.

{¶ 64} Assignment of Error No. 6:

{¶ 65} APPELLANT IS ENTITLED TO APPELLATE REVIEW OF HIS SENTENCE, AND R.C. 2953.08(D)(3), WHICH PROHIBITS REVIEW OF A SENTENCE IMPOSED FOR AGGRAVATED MURDER, VIOLATES APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND IS, THEREFORE, UNCONSTITUTIONAL.

{¶ 66} Grevious argues in his final assignment of error that his sentence is unconstitutional because the applicable statutes distinguish between defendants convicted of lesser crimes and those who commit aggravated murder with the potential for capital punishment.

{¶ 67} R.C. 2929.03(D)(2)(a) and (c) provide that a jury must recommend a sentence of life with or without parole eligibility when that jury finds the defendant guilty of aggravated murder and the death specification but elects not to impose the death penalty, and that the trial court must then impose the recommended sentence.

{¶ 68} There is no constitutional right to appellate review of a criminal sentence because the right of such review is that conferred by statute. *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613. The Ohio Supreme Court has determined that R.C. 2953.08(D) is unambiguous, and pursuant to that statute, a sentence imposed for aggravated murder as outlined above cannot be reviewed. *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095.

{¶ 69} However, this does not create equal protection issues, as Grevious claims. Ohio courts are in agreement that Ohio's sentencing statutes pass rational basis review because the Ohio General Assembly has a legitimate interest in treating the worst offenders differently than other felony offenders and the challenged statute provides a rational means to achieve that interest. *State v. Wilson*, 4th Dist. Lawrence No. 16CA12, 2018-Ohio-2700; *State v. Weaver*, 5th Dist. Muskingum No. CT2016-0033, 2017-Ohio-4374; and *State v.*

*Burke*, 2d Dist. Montgomery No. 26812, 2016-Ohio-8185.

**{¶ 70}** We agree with and adopt the analysis and rationale of our sister districts who have determined that R.C. 2953.08(D)(3) is constitutional.  After considering all of Grevious' arguments in regard to this issue, we overrule Grevious' final assignment of error.

**{¶ 71}** Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J. concur.