[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Grevious*, Slip Opinion No. 2022-Ohio-4361.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4361

THE STATE OF OHIO, APPELLEE, *v*. GREVIOUS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Grevious*, Slip Opinion No. 2022-Ohio-4361.]**

*Criminal law—Aggravated murder—Appeals—R.C. 2953.08(D)(3)—The portion of the judgment of the court of appeals relating to the constitutionality of R.C. 2953.08(D)(3) is affirmed—Because R.C. 2953.08(D)(3) does not preclude an appellate court from reviewing a constitutional challenge to an aggravated-murder sentence on appeal, the court of appeals erred by declining to review the merits of appellant's constitutional challenges to his aggravated-murder sentence—Court of appeals' judgment affirmed in part and reversed in part and cause remanded to the court of appeals.*

(No. 2019-0912—Submitted December 7, 2021—Decided December 9, 2022.)

APPEAL from the Court of Appeals for Butler County,

No. CA2018-05-093, 2019-Ohio-1932.

_____

**O'CONNOR, C.J., announcing the judgment of the court.**

{¶ 1} In this discretionary appeal, we consider the constitutionality of R.C. 2953.08(D)(3), which states: "A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." Recently, in *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 1, we held that R.C. 2953.08(D)(3) does not preclude an appellate court from reviewing an offender's sentence for aggravated murder when the offender raises a constitutional claim regarding that sentence on appeal. Prior to this court's decision in *Patrick*, the Twelfth District Court of Appeals declined to review appellant Michael Grevious's challenges to his aggravated-murder sentence based on R.C. 2953.08(D)(3) and concluded that the provision was not unconstitutional for precluding appellate review of a sentence for aggravated murder. 2019-Ohio-1932, ¶ 68-70. Grevious now asks this court to declare R.C. 2953.08(D)(3) unconstitutional on its face and as applied to him under the Eighth and Fourteenth Amendments to the United States Constitution. We decline to do so, and accordingly, we affirm the portion of the Twelfth District's judgment relating to the constitutionality of R.C. 2953.08(D)(3). However, in light of our decision in *Patrick*, we reverse the portion of the court of appeals' judgment concluding that it lacked authority to review the merits of Grevious's constitutional challenges to his aggravated-murder sentence, and we accordingly remand the case to the court of appeals for it to consider the merits of those challenges.

**I. Relevant Background**

{¶ 2} R.C. 2929.03 sets forth the procedures for sentencing a defendant for aggravated murder. To face the possibility of a death sentence, a defendant must be charged with aggravated murder and at least one specification for an aggravating circumstance. R.C. 2929.03(A) and (B). Here, the state charged Grevious in the Butler County Court of Common Pleas with aggravated murder and the aggravating circumstance of committing the offense for hire. A jury ultimately found Grevious

guilty of both aggravated murder and the murder-for-hire specification. The facts underlying Grevious's offenses are not relevant to resolving this appeal and will not be addressed herein, but they are set forth in the court of appeals' decision below, *see* 2019-Ohio-1932 at ¶ 2-5.

{¶ 3} If a defendant is found guilty of both aggravated murder and a specification for an aggravating circumstance, as Grevious was here, then absent the applicability of certain exceptions, the defendant must be sentenced to either death or one of three life sentences, R.C. 2929.03(C)(2)(a)(i). Because Grevious's case was tried by a jury, R.C. 2929.03(C)(2)(b)(ii) required his aggravated-murder sentence to also be determined by the jury. In the sentencing phase of an aggravated-murder case, the jury considers evidence and testimony relevant to the aggravating circumstances and any mitigating factors set forth in R.C. 2929.04(B). R.C. 2929.03(D)(1). To recommend the death penalty, the jury must unanimously find "by proof beyond a reasonable doubt, that the aggravating circumstances * * * outweigh the mitigating factors." R.C. 2929.03(D)(2). Absent such a finding, the jury must recommend that the defendant be sentenced to one of the following life sentences: (1) life imprisonment without parole, (2) life imprisonment with parole eligibility after serving 25 years, or (3) life imprisonment with parole eligibility after serving 30 years. R.C. 2929.03(D)(2)(a). Notably, "the court *shall* impose the sentence recommended by the jury upon the offender." (Emphasis added.) R.C. 2929.03(D)(2)(c).

{¶ 4} Here, the jury did not unanimously find by proof beyond a reasonable doubt that the aggravating circumstance of Grevious committing the aggravated murder for hire outweighed the mitigating factors, and therefore, it could not recommend that the court impose a death sentence on Grevious. The jury selected from the three available sentencing options noted above and recommended that the trial court sentence Grevious to life imprisonment without the possibility of parole.

Pursuant to R.C. 2929.03(D)(2)(c), the trial court imposed the recommended sentence.

**{¶ 5}** Grevious appealed his sentence, challenging R.C. 2953.08(D)(3) on constitutional grounds for unduly limiting appellate review of his sentence for aggravated murder. The court of appeals concluded that R.C. 2953.08(D)(3) does not unconstitutionally "distinguish between defendants convicted of lesser crimes and those who commit aggravated murder with the potential for capital punishment," 2019-Ohio-1932 at ¶ 66, because the General Assembly "has a legitimate interest in treating the worst offenders differently than other felony offenders," *id*. at ¶ 69. It therefore determined that R.C. 2953.08(D)(3) does not violate an offender's equal-protection rights and is constitutional. *Id*. at ¶ 70. As a result, the court applied R.C. 2953.08(D)(3), declined to review the merits of Grevious's claims regarding his sentence, and affirmed his sentence. *Id*.

**{¶ 6}** We initially declined to accept Grevious's discretionary appeal. *See* 157 Ohio St.3d 1419, 2019-Ohio-3797, 131 N.E.3d 958. However, on reviewing Grevious's motion for reconsideration, we accepted the appeal on the following proposition of law and held the case for our decision in *State v. Kinney*, 163 Ohio St.3d 537, 2020-Ohio-6822, 171 N.E.3d 318:

> R.C. 2953.08(D)(3) must be declared unconstitutional for the reason that it violates appellant's and other similarly situated citizens' due process and equal protection rights under the Eighth and Fourteenth Amendments to the United States Constitution by prohibiting appellate courts from reviewing sentences imposed for aggravated murder.

*See* 157 Ohio St.3d 1502, 2019-Ohio-4768, 134 N.E.3d 1227. Following our decision in *Kinney*, we lifted the hold and stay of briefing. 160 Ohio St.3d 1514, 2020-Ohio-6834, 159 N.E.3d 1184.

## II. Analysis

{¶ 7} Grevious requests that we declare R.C. 2953.08(D)(3) unconstitutional on its face and as applied to him. He contends that R.C. 2953.08(D)(3) violates his and similarly situated offenders' due-process and equal-protection rights and constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and the federal provisions' counterparts under the Ohio Constitution because the statutory provision denies appellate review to offenders, like Grevious, with noncapital sentences for aggravated murder while providing offenders sentenced for lesser felonies with the right to appeal their sentences under R.C. 2953.08.

{¶ 8} Grevious argues that because of R.C. 2953.08(D)(3), the court of appeals refused to consider the merits of his appeal—specifically, his arguments that his sentence is contrary to law and unconstitutional. Although he acknowledges that in light of this court's decision in *Patrick*, R.C. 2953.08(D)(3) does not preclude appellate review of his sentence on *constitutional* grounds, he emphasizes that R.C. 2953.08(D)(3) still bars him and offenders like him from raising nonconstitutional sentencing claims such as that a sentence is contrary to law. This bar on appellate review for aggravated-murder offenders with noncapital sentences, Grevious maintains, eliminates any "check on a trial court's discretion and possible abuse" and promotes "gross abuse of discretion in sentencing," especially in cases like his, in which the trial court, he alleges, provided the jury with no guidance regarding the overriding purposes of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.

### A. Standard of Review

**{¶ 9}** As always, we begin our review of a statute with the presumption that it is constitutional. *See* R.C. 1.47. For this court to find R.C. 2953.08(D)(3) unconstitutional, Grevious must establish "beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible," *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Further, "doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." *State v. Gill*, 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 (1992).

### B. R.C. 2953.08

**{¶ 10}** Before turning to the merits of Grevious's arguments, we first review the statutory scheme challenged here. R.C. 2953.08 permits a criminal defendant to appeal his or her felony sentence on certain grounds: "In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant [on certain grounds]." R.C. 2953.08(A). As we recently noted in *Patrick*, those certain grounds by which a defendant may appeal his or her sentence are set forth in R.C. 2953.08(A) and (C):

> R.C. 2953.08(A)(1) and (5) describe the grounds for appeal if certain sentences are imposed pursuant to R.C. 2929.14 or 2929.142. R.C. 2953.08(A)(2) applies to sentences including a prison term imposed for a fourth- or fifth-degree felony or a felony drug offense that could be subject to only a community-control sanction under R.C. 2929.13(B). R.C. 2953.08(A)(3) applies to sentences imposed pursuant to R.C. 2971.03. R.C. 2953.08(C) applies to consecutive sentences imposed under R.C. 2929.14(C)(3) and certain additional sentences imposed under R.C. 2929.14.

*Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, at ¶ 20. R.C. 2953.08(A)(4) also provides an avenue for a defendant to appeal a felony sentence on the basis that the sentence "is contrary to law."

{¶ 11} R.C. 2953.08(D)(3), however, states that a "sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review *under this section*." (Emphasis added.) Nestled within that limited statutory range is the statute under which Grevious was sentenced—R.C. 2929.03. This court has previously held that R.C. 2953.08(D) is unambiguous and "clearly means what it says": a sentence imposed for aggravated murder or murder "cannot be reviewed." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 17. *Porterfield*, however, did not involve a constitutional challenge to the defendant's sentence or to R.C. 2953.08(D) itself.

{¶ 12} More recently, this court decided in *Patrick* that R.C. 2953.08(D)(3) does not preclude appellate review of a constitutional challenge to a sentence for aggravated murder. *Patrick* at ¶ 22. We explained that R.C. 2953.08 clearly "does not establish the *only* avenue by which a party may appeal a sentence" (emphasis sic), *Patrick* at ¶ 15, and that, in fact, R.C. 2953.02 also provides a statutory right to appeal a criminal sentence, *Patrick* at ¶ 16. And we concluded that "R.C. 2953.08(D)(3)'s statutory language makes clear that it does not preclude other potential avenues of appellate review," such as an appeal of an aggravated-murder sentence based on constitutional grounds, because R.C. 2953.08(D)(3)'s preclusive language "demonstrates that its scope is limited to the bases of appeal described in R.C. 2953.08," *Patrick* at ¶ 17.

## C. *Grevious has standing to challenge R.C. 2953.08*

{¶ 13} The parties agree that the sole issue before this court is whether R.C. 2953.08(D)(3) is constitutional. Nevertheless, the state argues that Grevious lacks standing to challenge that provision because "even if th[is] Court provided the

requested relief and declared [R.C. 2953.08(D)(3)] unconstitutional it would have no bearing on the sentencing claims Grevious actually brought in the Court of Appeals." We disagree.

{¶ 14} To have standing to challenge the constitutionality of a statute, a party must have a direct interest in the statute of such a nature that his or her rights will be adversely affected by its enforcement. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 30, citing *Anderson v. Brown*, 13 Ohio St.2d 53, 233 N.E.2d 584 (1968), paragraph one of the syllabus. Generally, this means that a party challenging a statute on the basis of equal protection must be a member of the class that the statute allegedly discriminates against and must have been injured by it. *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, ¶ 11, citing *State ex rel. Harrell v. Streetsboro City School Dist. Bd. of Edn.*, 46 Ohio St.3d 55, 62-63, 544 N.E.2d 924 (1989), and *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 512 N.E.2d 971 (1987), syllabus.

{¶ 15} It is true that since we accepted Grevious's discretionary appeal, this court has issued decisions that have clarified the landscape of appellate review under R.C. 2953.08. *See, e.g.*, *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649; *Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952. That fact, however, does not impact Grevious's *standing* to challenge R.C. 2953.08(D)(3) on constitutional grounds; rather, those decisions may relate to the *merits* of Grevious's constitutional challenge to R.C. 2953.08(D)(3). Regardless of the success of his appeal here, Grevious has been adversely affected by the enforcement of R.C. 2953.08(D)(3), as the court of appeals held that pursuant to that provision, his aggravated-murder sentence may not be reviewed on appeal. 2019-Ohio-1932 at ¶ 68, 70. The court denied review of his sentencing claims because he is a member of a class that R.C. 2953.08(D)(3) allegedly discriminates against—offenders with noncapital sentences for aggravated murder. *Id*. at ¶ 68. Accordingly, Grevious's injury is his inability to obtain appellate review of his

aggravated-murder sentence under R.C. 2953.08(D)(3), and the relief he now seeks is this court's declaration that the same provision is unconstitutional, so that it no longer precludes review of his sentence. *See State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 38, fn. 4 (lead opinion) (explaining that standing involves the right of a party who has suffered actual injury to seek redress from the court). And whether R.C. 2953.08(D)(3) indeed bars any appellate review of aggravated-murder sentences in violation of Grevious's due-process, equal-protection, and Eighth Amendment rights involves the merits of his constitutional challenges. *See Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 23 ("It is well settled that standing does not depend on the merits of the [party's] contention that particular conduct is illegal or unconstitutional"). Therefore, we are not persuaded by the state's argument that Grevious lacks standing. And with that, we turn to the constitutionality of R.C. 2953.08(D)(3).

### D. Equal protection

{¶ 16} Although Grevious now purports to challenge the constitutionality of R.C. 2953.08(D)(3) under both the federal and Ohio Constitutions, he challenged the provision under only the federal Constitution in the court of appeals. Accordingly, we focus our analysis solely on the federal Constitution.

{¶ 17} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." In essence, the Equal Protection Clause requires the government to treat individuals in a manner similar to others in like circumstances, *see Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and "prohibits treating similar groups differently based on criteria that are unrelated to the purpose of the law," *State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 13, citing *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Importantly, the Equal Protection Clause should not be applied to " 'deny to States the power to

treat different classes of persons in different ways.' " *Eisenstadt v. Baird*, 405 U.S. 438, 446-447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), quoting *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

**{¶ 18}** A party may challenge a statute as being unconstitutional on its face and as applied to a particular set of facts. *See Ams. for Prosperity Found. v. Bonta*, ___ U.S. ___, ___, 141 S.Ct. 2373, 2385, 210 L.Ed.2d 716 (2021). The former method—facial challenge—is the more difficult challenge on which to succeed, because the challenger must establish that there exists no set of circumstances under which the statute would be valid. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In an as-applied challenge, on the other hand, the challenger contends that the statute's application violates his or her constitutional rights under the circumstances of a particular case. *See United States v. Christian Echoes Natl. Ministry, Inc.*, 404 U.S. 561, 565, 92 S.Ct. 663, 30 L.Ed.2d 716 (1972). Grevious argues that R.C. 2953.08(D)(3) is unconstitutional both on its face and as applied.

**{¶ 19}** Since neither party argues that a fundamental right or a suspect class is implicated in this case, the correct standard for this court to apply is that of rational basis. *See McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 8; *Estelle v. Dorrough*, 420 U.S. 534, 538, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) ("this Court in dealing with equal protection challenges to state regulation of the right of appeal in criminal cases ha[s] applied the traditional rational-basis test"). The rational-basis standard is the test most deferential to the legislature, *see Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 32, and it requires a court to uphold a legislative classification if the classification is rationally related to a legitimate governmental purpose, *Roseman v. Firemen & Policemen's Death Benefit Fund*, 66 Ohio St.3d 443, 447, 613 N.E.2d 574 (1993); *Noling* at ¶ 14, citing *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Stated

differently, the Equal Protection Clause requires that "in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' " *Rinaldi v. Yeager*, 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), quoting *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). The party challenging the constitutionality of the statute bears "the burden to negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Noling* at ¶ 13, quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

### 1. The parties' equal-protection arguments

{¶ 20} Grevious contends that "[b]ecause R.C. 2953.08(D)(3) bars any [appellate] review of aggravated murder sentences," it deprives offenders with noncapital sentences for aggravated murder, like him, of the equal protection of the law. He asserts that R.C. 2953.08(D)(3) unconstitutionally distinguishes between offenders with noncapital sentences for aggravated murder and offenders sentenced for lesser felonies, the latter of which may appeal their sentences under R.C. 2953.08. More specifically, Grevious contends that R.C. 2953.08(D)(3), as applied to him, bars appellate review of any claim that his noncapital sentence for aggravated murder is contrary to law, while providing offenders sentenced for lesser felonies with the right to have their nonconstitutional sentencing claims reviewed under R.C. 2953.08. He maintains that the General Assembly could have had no legitimate interest for making that distinction, especially given that offenders "worse" than he, such as those sentenced to the death penalty for aggravated murder, are afforded appellate review under R.C. 2929.05.

{¶ 21} The state disagrees with Grevious and asserts that "it was entirely rational for the General Assembly to exclude aggravated murder sentences" from appellate review under R.C. 2953.08 because that statute "reflects a legislative plan to provide limited appellate review of the sentencing court's compliance with

[Am.Sub.S.B. No. 2]'s specific statutory sentencing requirements which apply only to those *classified felonies*." (Emphasis sic.) *See* 146 Ohio Laws, Part IV, 7136. The state explains that unlike sentences for many classified felonies, no statutory findings must be made before a trial court imposes a life-without-parole sentence for aggravated murder. And in the state's view, "R.C. 2953.08(D)(3) logically reflects that distinction." Accordingly, the state emphasizes that aggravated-murder offenders like Grevious are "*not* similarly situated to other felony offenders when it comes to the gravity of their crimes and the procedures by which they are sentenced." (Emphasis sic.)

{¶ 22} We must first clarify a few aspects of Grevious's arguments. First, at points in his briefing, Grevious seems to base his equal-protection claim also on the distinction between offenders with noncapital sentences for aggravated murder and offenders with death sentences for aggravated murder. But Grevious did not raise this argument below, and therefore, it is beyond the scope of this appeal. *See State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10 ("a party ordinarily may not present an argument on appeal that it failed to raise below").

{¶ 23} Second, Grevious classifies himself as a member of the class of offenders with noncapital sentences for aggravated murder who are barred from appellate review under R.C. 2953.08, when in fact Grevious is a member of a much narrower class. "The constitutional inquiry in an as-applied challenge is limited to the [challenger's] particular situation." *Women's Med. Professional Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir.1997). As noted above, Grevious was sentenced pursuant to R.C. 2929.03(D)(2)(a) and (c), which means that the jury, after unanimously declining to recommend the death penalty, recommended one of the three mandatory life-imprisonment terms permitted under the statute and that the trial court was statutorily required to impose that recommended sentence. As a result, our constitutional inquiry turns on whether R.C. 2953.08(D)(3), as applied

to Grevious's particular situation—i.e., an offender sentenced for aggravated murder pursuant to R.C. 2929.03(D)(2)(a) and (c)—deprives him of the equal protection of the law.

**{¶ 24}** And lastly, Grevious clearly acknowledges in portions of his briefing that R.C. 2953.08 does not bar review of constitutional challenges to his sentence, but he also states that "R.C. 2953.08(D)(3) bars *any* review of aggravated murder sentences." (Emphasis added.) Consequently, we pause to reiterate that, as discussed above, this court recently clarified that R.C. 2953.08 is not the only means of appellate review of an aggravated-murder sentence, *Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, at ¶ 15, and that the statute does not preclude other potential avenues of appellate review, *id*. at ¶ 17. Thus, contrary to Grevious's general assertions, R.C. 2953.08(D)(3) does not bar *all* appellate review of aggravated-murder sentences; rather, it precludes review of such sentences under R.C. 2953.08 on the specific grounds that the statute provides.

**{¶ 25}** Grevious directs this court's attention to our decision in *Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141. In *Noling*, the challenged statute permitted an offender sentenced to death to appeal a trial court's denial of the offender's application for postconviction DNA testing. *Id*. at ¶ 5. The statute provided that a capital offender's appeal would skip the court of appeals altogether but that an appeal to this court would be a discretionary one, requiring a majority of the justices of this court to vote to accept jurisdiction. *Id*. at ¶ 5-6. If a majority of the justices declined jurisdiction over the appeal, then the decision of the trial court would stand. *Id*. at ¶ 6. In contrast, under that same statute, a noncapital offender had the right to appeal a trial court's denial of an application for postconviction DNA testing to the court of appeals, which had no discretion to decline review. *Id*.

**{¶ 26}** We concluded in *Noling* that the statute at issue in that case violated state and federal principles of equal protection, because no legitimate purpose

existed to support the statute's "two-track appellate process" that discriminated between capital and noncapital offenders. *Id*. at ¶ 31. In doing so, this court rejected the attorney general's argument that capital and noncapital offenders were not similarly situated, because the differences between the offenders cited by the attorney general focused on the imposition of a sentence. *Id*. at ¶ 19. We noted that the challenged statutory scheme concerned applications for postconviction DNA testing, not the imposition of a sentence, and thus the fact that certain applicants were sentenced to death and others to prison terms was "nearly irrelevant under the statute." *Id*. Because the capital and noncapital offenders followed the same application process for DNA testing and the applications were subject to the same level of scrutiny in the trial court, this court determined that the classes were similarly situated. *Id*. at ¶ 18-19.

**{¶ 27}** Grevious contends that R.C. 2953.08(D)(3) contains this same "two-track process," permitting appellate review of lesser felony sentences but precluding appellate review of noncapital sentences for aggravated murder. And he believes that, as in *Noling*, there is no rational basis for such a distinction. We disagree.

**{¶ 28}** Unlike in *Noling*, the classes at issue here are not similarly situated with regard to R.C. 2953.08, as each class is subject to different sentencing schemes that provide different sentencing procedures and distinct levels of discretion to the trial court. This is well demonstrated by the different statutory schemes that govern each class, the grounds for appeal provided in R.C. 2953.08, and the legislative purpose of that statute, *see United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (looking to the legislative history of the statute at issue to illuminate its purpose).

*2. Legislative purpose and language of R.C. 2953.08*

**{¶ 29}** The General Assembly enacted R.C. 2953.08 in 1996 as part of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, and its companion legislation,

14

Am.Sub.S.B.No. 269, 146 Ohio Laws, Part VI, 10752 (collectively, "S.B. 2"). Prior to S.B. 2's enactment, trial courts possessed "great discretion" in sentencing, but that discretion was "virtually immune from meaningful appellate review in Ohio." Lewis R. Katz, Ohio Sentencing Commission, *Testimony before the Ohio Senate Judiciary Committee* (Feb. 15, 1995). Because of this, the General Assembly instructed the Ohio Sentencing Commission to develop a sentencing plan that "considered judicial discretion, uniformity and fairness." *Id*. The passage of R.C. 2953.08 was intended to combine these principles by retaining a trial court's discretion in sentencing while providing appellate review of the trial court's exercise of such discretion for uniformity and fairness. Katz, *Testimony before the Ohio Senate Judiciary Committee* ("The only way to combine a principled system which retains judicial discretion with guarantees of uniformity and fairness is to build into the plan a system of limited appeals by both the state and the defendant"). However, the statute never "contemplate[d] appeals in every case;" rather, it delineated grounds for appeal as a matter of right when "the sentence imposed in a particular case is contrary to critical presumptions and policies within the statute." *Id*.

{¶ 30} Several of the grounds for appeal set forth in R.C. 2953.08(A) through (C) reflect this intent to provide appellate review—not in all cases but in situations in which the trial court has exercised its broad *discretion* in imposing certain sentences. For instance, R.C. 2953.08(A)(5) prescribes grounds for appeal when the trial court has elected to impose a sentence including an additional prison term of ten years under R.C. 2929.14(B)(2)(a), and R.C. 2953.08(A)(1) prescribes grounds for appeal when the trial court has elected to impose the maximum definite prison term permitted under R.C. 2929.14(A) (setting forth the basic ranges for felonies classified by degree) or R.C. 2929.142 (outlining the range of mandatory prison terms for aggravated vehicular homicide when the offender has previous operating-a-vehicle-while-under-the-influence-type convictions). Similarly, R.C.

2953.08(A)(2) pertains to a trial court's decision to impose a prison term for a fourth- or fifth-degree felony or a felony drug offense that could be subject to only a community-control sanction, and R.C. 2953.08(A)(3) pertains to a trial court's decision to impose the longest minimum prison term available under specified statutes for certain offenders adjudicated to be sexually violent predators. Another example is R.C. 2953.08(B)(1), which permits the state to appeal when the trial court has elected not to impose a prison term despite certain statutorily delineated presumptions in favor of a prison term. Lastly, R.C. 2953.08(C) provides grounds for appeal when the trial court has chosen to impose consecutive prison sentences or certain lengthier sentences under R.C. 2929.14.

{¶ 31} In all the above instances, the grounds for appeal involve the trial court's exercise of its broad discretion, and in exercising that discretion, the trial court follows particular statutory sentencing requirements. *See Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, at ¶ 22. This court has noted that R.C. 2953.08(A)(4), which permits an appeal on the ground that a sentence is "contrary to law," is "of a similar nature" to the other provisions in R.C. 2953.08, *Patrick* at ¶ 22, relating to whether the trial court followed statutory sentencing requirements.

{¶ 32} In contrast, R.C. 2953.08(D)(1), which is one of the other limitations on the right to appeal a felony sentence under R.C. 2953.08, involves a situation in which the trial court does not exercise its discretion in imposing a sentence. R.C. 2953.08(D)(1) precludes appellate review under R.C. 2953.08 when the sentence is authorized by law, has been recommended jointly by the parties, and is imposed by the sentencing judge. In that situation, appellate review under R.C. 2953.08 is unnecessary because the parties have agreed that the sentence is appropriate and the trial court accordingly has elected not to exercise its broad discretion in determining the sentence. *See Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, at ¶ 25 ("The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the

sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence").

3. *The trial court lacks discretion when sentencing an offender for aggravated murder pursuant to R.C. 2929.03(D)(2)(a) and (c)*

**{¶ 33}** As discussed above, Grevious was sentenced pursuant to R.C. 2929.03(D)(2)(a) and (c), which means that he was found guilty of both the aggravated-murder charge and a specification for an aggravating circumstance for which a death sentence was a possible penalty. Because Grevious chose to be tried by a jury, R.C. 2929.03(C)(2)(b)(ii) required that the aggravated-murder sentence also be determined by the jury. And because the jury did not unanimously find by proof beyond a reasonable doubt that the aggravating circumstance outweighed the mitigating factors, the jury could not recommend that the trial court impose a death sentence. *See* R.C. 2929.03(D)(2). Therefore, it had to recommend a sentence of life imprisonment without the possibility of parole, life imprisonment with parole eligibility after 25 years, or life imprisonment with parole eligibility after 30 years. *See* R.C. 2929.03(D)(2)(a).

**{¶ 34}** The jury ultimately recommended that Grevious be sentenced to life imprisonment without the possibility of parole. And as required by the statutory scheme, the trial court had no choice but to impose that recommended sentence. *See* R.C. 2929.03(D)(2)(c) ("the court *shall* impose the sentence recommended by the jury upon the offender" [emphasis added]). Stated differently, a trial court imposing an offender's sentence for aggravated murder pursuant to R.C. 2929.03(D)(2)(a) and (c) does not have any discretion as to the offender's sentence; the jury determines the sentence, and it does so based on the specific mitigating factors provided by statute *only* for situations like Grevious's, in which the offender is found guilty of both aggravated murder and an aggravating circumstance. *See* R.C. 2929.04(B) (containing the nonexhaustive list of mitigating factors); R.C.

2929.03(D)(1) (mandating consideration of "the mitigating factors set forth in [R.C. 2929.04(B)]").

{¶ 35} In contrast, the other felony offenses for which R.C. 2953.08 permits appellate review are classified by degree of felony, *see* R.C. 2901.02(A),[1] and are governed by R.C. 2929.13 through 2929.20. Generally, the degree of a felony corresponds with sentencing presumptions regarding the felony, a range of prison terms for the felony, and the potential sanctions from which the trial court may choose for the felony. *See State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 35 (noting that Ohio's felony-sentencing plan "is determinate for most offenses, for the court selects a specific prison term from different statutory ranges as determined by the level of the felony charged"), *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009); *see also* R.C. 2929.14(A) (providing the basic prison-term ranges for the five felony-offense degrees); R.C. 2929.13(A) (subject to certain exceptions, including aggravated-murder sentences under R.C. 2929.03, "a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code"). And unlike the sentencing provisions governing aggravated murder, the sentencing statutes governing felonies classified by degree do not authorize a jury to be involved in the sentencing determination. *See, e.g.*, *State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644, ¶ 16 (explaining that the sentencing statutes pertinent to the defendant's drug-related offenses in that case "vest the exclusive responsibility to make these [sentencing] determinations in the court and not in a jury"). The statutory procedures for sentencing offenders for felonies classified by degree are therefore vastly different from those for

---

1. R.C. 2901.02 classifies aggravated murder, murder, and felonies of the first, second, third, fourth, and fifth degree as felony offenses. Because R.C. 2953.08(D)(3) excludes aggravated-murder and murder sentences from review under R.C. 2953.08, the only remaining felony sentences for which R.C. 2953.08 allows appellate review are felonies classified by degree.

sentencing offenders for aggravated murder under R.C. 2929.03(D)(2)(a) and (c), because the trial court, when sentencing offenders for most felony offenses classified by degree, exercises its discretion in determining the particular sentence based on the applicable statutory range, the sentencing presumptions, and the sanctions available. Further, as demonstrated above, the grounds for appellate review provided in R.C. 2953.08 are directed toward situations in which the trial court exercises its discretion in sentencing an offender who has been convicted of a felony classified by degree.

{¶ 36} R.C. 2953.08, as a whole, demonstrates the legislature's intent to provide appellate review of *trial courts'* "great discretion" in sentencing and an opportunity for appellate courts to review such exercise of discretion for uniformity and fairness. Katz, *Testimony before the Ohio Senate Judiciary Committee*. Because the sentencing statute governing Grevious's aggravated-murder sentence provides no discretion to the trial court when imposing a recommended mandatory life sentence, the class of which Grevious is a member—offenders sentenced for aggravated murder under R.C. 2929.03(D)(2)(a) and (c)—is not situated similarly to the class of felony offenders over whom judges have discretion in fashioning their sentences, a conclusion that is supported by the legislative purpose of R.C. 2953.08. *See Nguyen v. Immigration & Naturalization Serv.*, 533 U.S. 53, 63, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (concluding that the classes at issue in that case were not similarly situated with regard to the governmental interest behind the challenged statute). The sentencing of aggravated-murder offenders such as Grevious is different from the sentencing of offenders convicted of lesser felonies that are classified by degree, which generally involves statutes that grant discretion to the trial court to select the sentence from the statutorily available options. Accordingly, there exists a legitimate purpose for R.C. 2953.08 to permit offenders sentenced for felonies classified by degree to appeal those sentences and seek review of the trial court's exercise of its discretion, while precluding aggravated-

murder offenders sentenced under R.C. 2929.03(D)(2)(a) and (c) from seeking such review because the *trial court does not* exercise discretion when sentencing such aggravated-murder offenders.

**{¶ 37}** For these reasons, Grevious has failed to demonstrate that R.C. 2953.08(D)(3), as applied to him, deprives him of the equal protection of the laws. Grevious does not differentiate between his facial and as-applied challenges to R.C. 2953.08(D)(3). Thus, because Grevious cannot establish an as-applied violation of his right to equal protection, his facial challenge to R.C. 2953.08(D)(3) must also fail; there is a circumstance under which R.C. 2953.08(D)(3) is valid. *See Arkim v. Bellnier*, N.D.N.Y. No. 9:09-CV-0775, 2014 U.S. Dist. LEXIS 42825, *11 (Mar. 5, 2014); *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir.2012), quoting *Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir.2008) ("a defendant who fails to demonstrate that a challenged law is unconstitutional as applied to him has 'necessarily fail[ed] to state a facial challenge, which requires [him] to establish that no set of circumstances exists under which the statute would be valid' " [brackets added in *Decastro*]).

**{¶ 38}** We pause to emphasize that this conclusion regarding Grevious's equal-protection claim is a narrow one that is limited to the particular statutory provision at issue here. Grevious has failed to meet his burden to negate "any reasonably conceivable state of facts that could provide a rational basis," *Beach Communications*, 508 U.S. at 313, 113 S.Ct. 2096, 124 L.Ed.2d 211, for R.C. 2953.08(D)(3)'s distinguishing between him as an offender sentenced for aggravated murder pursuant to R.C. 2929.03(D)(2)(a) and (c) and offenders sentenced for lesser felonies. *See de Fuentes v. Gonzales*, 462 F.3d 498, 504 (5th Cir.2006) ("It is Petitioner's burden to show that the law, as-applied, is arbitrary; and not the government's to establish rationality").

### E. Grevious's due-process and Eighth Amendment challenges to R.C. 2953.08(D)(3) also fail

{¶ 39} Turning to Grevious's due-process claim, he provides only a cursory argument in his briefing: "[B]y prohibiting appellate courts from following appropriate procedures to ensure fairness in sentencing, R.C. 2953.08(D)(3) deprives a class of offenders from their due process rights." Grevious does not specify whether he brings this challenge on substantive or procedural due-process grounds. Regardless, his due-process argument is based on the same grounds as his equal-protection argument and therefore receives the same rational-basis review that applies in the equal-protection context. *See Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir.2015) ("Rational basis review in the context of equal protection is essentially equivalent to rational basis review in the context of due process"). Accordingly, to the extent that Grevious argues that he has a due-process right to appellate review of his sentence under R.C. 2953.08, that challenge fails for the same reasons that his equal-protection argument fails. *See Norton Constr. Co. v. United States Army Corps of Engineers*, 280 Fed.Appx. 490, 495 (6th Cir.2008).

{¶ 40} We also conclude that Grevious's Eighth Amendment challenge to R.C. 2953.08(D)(3) lacks merit. The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Grevious raises several arguments in support of his Eighth Amendment challenge to R.C. 2953.08(D)(3), many of which echo arguments made to this court in *Kinney*, 163 Ohio St.3d 537, 2020-Ohio-6822, 171 N.E.3d 318 (reversed and remanded to the court of appeals for further proceedings consistent with this court's decision in *Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952). We note, however, that Grevious did not raise the majority of these arguments below, nor did the court of appeals address his Eighth Amendment challenge to R.C. 2953.08. In fact, the only support Grevious presented below for his Eighth Amendment challenge included his

quoting the following statement of Justice Sotomayor that she made when the United States Supreme Court denied certiorari in *Campbell v. Ohio*, ___ U.S. ___, 138 S.Ct. 1059, 200 L.Ed.2d 502 (2018), in which the defendant challenged R.C. 2953.08(D)(3) on constitutional grounds, which Grevious restates in his briefing to this court:

> In my view, [this court's] jurisprudence provides good reason to question whether [R.C.] 2953.08(D)(3) really "means what it says": that a life-without-parole sentence, no matter how arbitrarily or irrationally imposed, is shielded from meaningful appellate review. Our Eighth Amendment jurisprudence developed in the capital context calls into question whether a defendant should be condemned to die in prison without an appellate court having passed on whether that determination properly took account of his circumstances, was imposed as a result of bias, or was otherwise imposed in a "freakish manner."
>
> * * *
>
> This case did not present either the Ohio courts or this Court the occasion to decide this important question. I believe the Ohio courts will be vigilant in considering it in the appropriate case.

(Citations omitted.) *Id*. at 1060-1061 (Sotomayor, J.). Grevious opined below that this is the appropriate case in which to consider this Eighth Amendment issue and, without any additional arguments, requested that the court of appeals strike down R.C. 2953.08(D)(3) on Eighth Amendment grounds.

{¶ 41} But the above-quoted statement of Justice Sotomayor was made prior to this court's decision in *Patrick*. And despite having the benefit of our decision in *Patrick* during his briefing to this court, Grevious has continued to

center his Eighth Amendment challenge on the premise that, "as applied to [life-without-parole] sentences, R.C. 2953.08(D)(3) constitutes cruel and unusual punishment because it denies *any* meaningful review of that sentence, forever." (Emphasis added.) Even if that argument is properly before this court, its premise that R.C. 2953.08(D)(3) denies *any* meaningful review of an aggravated-murder sentence is patently untrue under *Patrick* and there is no longer any basis for arguing that R.C. 2953.08(D)(3) implicates cruel and unusual punishment by denying *any* appellate review, because an aggravated-murder offender *can*, in fact, challenge his or her aggravated-murder sentence on direct appeal on constitutional grounds or via other avenues not precluded under R.C. 2953.08. *See Patrick* at ¶ 17, 22. Finally, because Grevious's other Eighth Amendment arguments were not presented below, we decline to address them here. *See Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378, ¶ 45.

### III.  Conclusion

{¶ 42} For the foregoing reasons, we affirm the portion of the judgment of the Twelfth District Court of Appeals relating to the constitutionality of R.C. 2953.08(D)(3). However, because this court decided in *Patrick* that R.C. 2953.08(D)(3) does not preclude an appellate court from reviewing a constitutional challenge to an aggravated-murder sentence on appeal, the court of appeals erred by declining to review the merits of Grevious's constitutional challenges to his aggravated-murder sentence. Accordingly, we reverse the portion of its judgment relating to that issue and remand the case to the court of appeals for it to review the merits of Grevious's constitutional challenges to his aggravated-murder sentence.

Judgment affirmed in part
and reversed in part
and cause remanded.

FISCHER, J., concurs.

DONNELLY, J., concurs, with an opinion.

KENNEDY and STEWART, JJ., concur in judgment only.

DEWINE, J., concurs in judgment only, with an opinion joined by BRUNNER, J.

_____

**DONNELLY, J., concurring.**

{¶ 43} I join the lead opinion, as far as it goes. Applying *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, the lead opinion correctly determines today that R.C. 2953.08(D)(3) does not prohibit Ohio's appellate courts from reviewing aggravated-murder sentences for constitutional infirmities. I write separately because consistently with my concurrence in *Patrick* and the position of appellant, Michael Grevious, I continue to believe that any discretionary sentence should be subject to appellate review. I see no principled way to advance the proposition that Ohio courts have the authority to review sentencing appeals on some grounds but not on others.

{¶ 44} Even apart from any constitutional concerns about a particular sentence, I agree with Grevious that eliminating any "check on a trial court's discretion and possible abuse" in sentencing enables "gross abuse of discretion." As Grevious points out, this is especially so in cases such as this one, in which the jury had the exclusive responsibility of choosing a sentence but the trial court provided the jury with no guidance regarding the overriding purposes of felony sentencing under R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. While the legislature has afforded only the jury and not the trial court the power to choose a discretionary sentence in cases such as this one, *see* R.C. 2929.03(D)(2)(a) and (c), I would hold that R.C. 2953.08(D)(3) does not prohibit appellate review of discretionary sentences for aggravated murder.

{¶ 45} R.C. 2953.08(D)(3) is self-limiting. Though it states that "[a] sentence imposed for aggravated murder or murder pursuant to [the Revised Code sections setting the penalties for murder and aggravated murder] is not subject to

review *under this section*" (emphasis added), it does not thereby foreclose review of all such sentences, *see Patrick* at ¶ 58 (Donnelly, J., concurring). *Patrick* made clear that R.C. 2953.08(D)(3) does not foreclose independent statutory rights to appeal such as those provided by R.C. 2953.02 ("in any other criminal case [besides a death-penalty case], * * * the judgment or final order of a court of record inferior to the court of appeals may be reviewed in the court of appeals"). *Patrick* at ¶ 16. And as I noted in my concurrence in *Patrick*, R.C. 2505.03(A) provides that "[e]very final order, judgment, or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction." *Patrick* at ¶ 62 (Donnelly, J., concurring).

{¶ 46} Additionally, R.C.2953.07 separately authorizes Ohio's courts of appeals to review criminal sentences that are claimed to be "contrary to law." And an appeal could encompass a claim that a discretionary sentence was imposed vindictively to punish the defendant for exercising his or her constitutional right to a trial. *See State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph two of the syllabus. Or an appeal could encompass a claim that a discretionary sentence was based on an illegal consideration such as the offender's race, ethnic background, gender, or religion. *See* R.C. 2929.11(C) (expressly forbidding a sentence that is based on the offender's race, ethnic background, gender, or religion). It is unfathomable that an offender's sentence that was based on such considerations could escape any appellate review just because the underlying conviction was for aggravated murder. And I remain convinced that a court's failure to adhere to the requirements of R.C. 2929.11 and 2929.12 may be reviewed on appeal. *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 45 (Donnelly, J., dissenting). Barring more explicit instruction by the legislature, Ohio's courts should apply all the statutes providing appellate rights to people sentenced for aggravated murder. I nevertheless join the lead opinion and concur in the court's judgment.

---

**DEWINE, J., concurring in judgment only.**

{¶ 47} I agree with the lead opinion that Michael Grevious has failed to demonstrate that R.C. 2953.08(D)(3) violates the United States Constitution by limiting his right to appeal his sentence for aggravated murder. I write separately to add a few thoughts about the standard we use to review constitutional challenges.

{¶ 48} The lead opinion says that to prevail, "Grevious must establish 'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" Lead opinion, ¶ 9, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. In doing so, it repeats verbiage that this court has often affixed to decisions dealing with constitutional challenges. But in my view, it is time that we remove that worn coin from circulation. Beyond-reasonable-doubt is an evidentiary standard that is poorly suited to the legal question whether a legislative enactment comports with the Constitution. This is probably why the standard is often repeated but not actually applied by this court. And if the standard were to be applied, it would undercut the protections for individual liberties guaranteed by the federal and state Constitutions.

**I. Background: beyond-reasonable-doubt as a standard for assessing constitutionality**

{¶ 49} The beyond-reasonable-doubt standard comes to us from criminal law. Scholarship traces the concept back to the "inquisitorial criminal procedure" that was "devised by Pope Innocent III circa 1199." Thomas P. Gallanis, *Reasonable Doubt and the History of the Criminal Trial*, 76 U.Chi.L.Rev. 941, 945-946 (2009). That system operated under the canon in dubio pro reo—"in doubt you must decide for the defendant." James Q. Whitman, *The Origins of Reasonable Doubt: Theological Roots of the Criminal Trial* 122 (2008). In the colonies, John

Adams invoked the beyond-reasonable-doubt concept in his 1770 defense of the Redcoat perpetrators of the Boston Massacre. *Id.* at 193.

{¶ 50} American courts have always used beyond-reasonable-doubt as the evidentiary standard in criminal cases. *See Coffin v. United States*, 156 U.S. 432, 456-458, 15 S.Ct. 394, 39 L.Ed. 481 (1895). Ohio is no exception. *See Farrer v. State*, 2 Ohio St. 54, 69 (1853) ("A mere preponderance of testimony as to the guilt of a person, will not satisfy the law; there must be such a preponderance as removes all reasonable doubt").

{¶ 51} The use of the beyond-reasonable-doubt standard to assess constitutionality has a more recent pedigree. It is most often associated with James Bradley Thayer, who believed that courts ought to be extremely deferential to the judgments of legislatures. In an influential article, Thayer postulated that courts should not invalidate statutes unless convinced "beyond a reasonable doubt" that the law is incompatible with the constitution. *The Origin and Scope of the American Doctrine of Constitutional Law*, 7 Harv.L.Rev. 129, 144 (1893). Courts could invalidate legislation only "when those who have the right to make laws have not merely made a mistake, but have made a very clear one—so clear that it is not open to rational question." *Id*. at 144. In this view, the Constitution left a range of interpretative options to the legislature, and "whatever choice is rational is constitutional." *Id.*

{¶ 52} A survey of our caselaw shows that our first invocation of the beyond-reasonable-doubt standard in a constitutional case came in 1877: "the validity of a statute [is] to be upheld and sustained, unless its repugnancy to the constitution appears beyond a reasonable doubt," *McGill v. State*, 34 Ohio St. 228, 245. And we often—but not consistently—invoked the standard in the decades that followed. *See, e.g*., *State ex rel. Atty. Gen. v. Toledo*, 48 Ohio St. 112, 132-133, 26 N.E. 1061 (1891); *Miami Cty. v. Dayton*, 92 Ohio St. 215, 222-223, 110 N.E. 726

(1915) ("courts * * * have held that the conflict must be 'beyond a reasonable doubt' "); *Dickman*, 164 Ohio St. at 147, 128 N.E.2d 59.

**{¶ 53}** There is a lot to be said for the Thayerian notion that judges should not lightly strike down legislative enactments. Our role is not the legislative role, and we must be careful that we do not under the guise of judicial review substitute our policy preferences for that of the legislature. Thus, it is appropriate that we start with the presumption that a law is constitutional, as the lead opinion does today. *See* lead opinion at ¶ 9; *see also Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77, 83 (1852). It is also appropriate that we invalidate legislation only when it is *clear* that a duly enacted law conflicts with the Constitution. *See Calder v. Bull*, 3 U.S. 386, 399, 1 L.Ed. 648 (1798) (courts should not exercise authority to hold a law unconstitutional "but in a clear and urgent case"); *Cincinnati, Wilmington & Zanesville RR. Co.* at 82 ("it is only when * * * clear incompatibility between the constitution and the law appear, that the judicial power can refuse to execute it"); Philip Hamburger, *Law and Judicial Duty* 311 (2008); Jeffrey S. Sutton, *Who Decides? States as Laboratories of Constitutional Experimentation* 56 (2021) (courts historically "deployed conventional tools of interpretation in construing constitutions and would invalidate a statute only if a clear conflict arose between the two"); John O. McGinnis, *The Duty of Clarity*, 84 Geo.Wash.L.Rev. 843, 880-881 (2016).

**{¶ 54}** But while it is important that we respect the principles of restraint that are inherent in our system of separation of powers, it is time that we stop saying (falsely) that we will only strike down a law that is unconstitutional beyond a reasonable doubt. Let me explain why.

## II. Retiring the beyond-reasonable-doubt standard in constitutionality cases

**{¶ 55}** We have been appending beyond-reasonable-doubt language to the front end of our constitutional cases for a long time, so why stop now? By my count, there are at least three good reasons.

*A. The beyond-reasonable-doubt evidentiary standard is a poor fit for assessing whether a statute comports with the Constitution*

**{¶ 56}** The most obvious problem with beyond-reasonable-doubt as a measure of constitutionality is that it is an extremely poor fit for the task. Beyond-reasonable-doubt makes sense as an evidentiary standard. It refers to a quantum of proof. It is something that, in theory at least, one could assign a number to. We will only convict someone if we are x percent sure of his guilt. (We might debate the number—is it 99.9 percent or 99.9999 percent? But in theory, it is something quantifiable.) It is the risk of error in a criminal conviction that we as a society are willing to tolerate. *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**{¶ 57}** The same is not true for constitutional judgments. There are not degrees of constitutionality—the Constitution, unlike evidentiary proof of a fact, does not operate on a continuum. "The Constitution is the superior law." *State ex rel. Campbell v. Cincinnati St. Ry. Co.*, 97 Ohio St. 283, 309, 119 N.E. 735 (1918). We don't add up the evidence and decide to what degree we are certain that something is unconstitutional. Rather, we look at things like text, precedent, and history to reach our best considered judgment as to whether a law violates the Constitution. That question is "susceptible of only two answers"—yes or no. *United States v. Watson*, 623 F.2d 1198, 1202 (7th Cir.1980).

**{¶ 58}** As a quantum of proof, the beyond-reasonable-doubt standard fits comfortably with the maxim that "it is better that ten guilty persons escape, than that one innocent suffer." 4 William Blackstone, *Commentaries on the Laws of England*, 352. But we would hardly say that it is better that ten unconstitutional laws be upheld than one constitutional law be struck down. *See Varner v. Martin*, 21 W.Va. 534, 542 (1883) ("it has been said, that it is better that ninety-nine guilty persons should escape than that one innocent person should be condemned. But * * * [i]t is not better, that the Constitution should be violated ninety and nine times

by the Legislature than, that the courts should erroneously hold one act of the Legislature unconstitutional").

{¶ 59} The point of an evidentiary standard of proof is to provide a benchmark by which a fact-finder can operate. Thus, when we say to a judge that he or she must determine whether there is probable cause to believe that someone committed a crime or whether the person is guilty beyond a reasonable doubt, we have conveyed a helpful guide to decision-making. We also provide a standard by which a superior court can review that decision. But when we ask a judge to decide whether something is unconstitutional beyond a reasonable doubt, we ask the judge to operate under a metric that is not comfortably suited to the task at hand.

*B. We don't seriously employ beyond-reasonable-doubt as a constitutional standard*

{¶ 60} Thayer's conception was that there would be "many cases" in which judges would "leav[e] untouched a determination of the legislature," not because the judge believed the law to be constitutional, but simply because the judge had some reasonable doubt as to the matter. Thayer, 7 Harv.L.Rev. at 151. But that is not how we operate.

{¶ 61} If this court truly employed a beyond-reasonable-doubt standard, we should be able to identify decisions stating that in the court's best judgment, the enactment was unconstitutional, but that because the matter is not free from doubt, we uphold the enactment. But I am not aware of a single recent case in which the court has done this. So either this court's justices don't really follow that standard, or when they do, they are unwilling to show their work. And that by itself suggests the inadequacy of beyond-reasonable-doubt as a constitutional standard.

{¶ 62} Sure, it is easy enough to find recent cases in which this court has announced beyond-reasonable-doubt as the standard it will use for its decision. *See, e.g.*, *State ex rel. Maras v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-3852, ___ N.E.3d ___, ¶ 12; *Neiman v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-2471, ___

N.E.3d \_\_\_, ¶ 56; *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, ¶ 76; *Put-in-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, 167 N.E.3d 922, ¶ 11; *Haight v. Minchak*, 146 Ohio St.3d 481, 2016-Ohio-1053, 58 N.E.3d 1135, ¶ 11. But there is no indication in these cases that the standard played any role whatsoever in this court's analysis. *See, e.g.*, *Neiman* at ¶ 101-102 (Fischer, J., dissenting) ("the majority opinion seems to ultimately apply some lesser burden of proof, even though it purports to apply the beyond-a-reasonable-doubt burden of proof"). Meanwhile, in other recent cases, the court has made constitutional judgments without any mention of the standard at all. *See, e.g.*, *State v. Drain*, \_\_\_ Ohio St.3d \_\_\_, 2022-Ohio-3697, \_\_\_ N.E.3d \_\_\_; *State v. O'Malley*, \_\_\_ Ohio St.3d \_\_\_, 2022-Ohio-3207, \_\_\_ N.E.3d \_\_\_; *Portage Cty. Educators Assn. for Dev. Disabilities-Unit B, OEA/NEA v. State Emp. Relations Bd.*, \_\_\_ Ohio St.3d \_\_\_, 2022-Ohio-3167, \_\_\_ N.E.3d \_\_\_; *Newburgh Heights v. State*, \_\_\_ Ohio St.3d \_\_\_, 2022-Ohio-1642, \_\_\_ N.E.3d \_\_\_.

{¶ 63} So the bottom line is that while the beyond-reasonable-doubt standard is something that we have rotely pasted into constitutional opinions, there is no indication that we actually use it.

*C. Application of the beyond-reasonable-doubt standard would deprive citizens of the liberties guaranteed by our federal and state Constitutions*

{¶ 64} It is a good thing that we don't really apply the beyond-reasonable-doubt standard in constitutional cases. If we did, we would deprive citizens of the rights guaranteed to them by our federal and state Constitutions.

{¶ 65} Think about how the standard would work if it were truly followed. A judge is confronted with a case featuring a law that infringes on a constitutional right. The judge is convinced that the law violates the Constitution, but in fairness, he has some doubts—perhaps a dissenting colleague has raised fair counterarguments. The judge feels obligated to uphold the law even though he

believes it is unconstitutional. The power of the state is aggrandized and the fundamental rights of the citizens are diminished.

{¶ 66} Now consider how the standard would work in the context of a system of stare decisis. The next time an issue arises, the judge is bound to follow precedent from the prior case upholding the law's constitutionality. As Sixth Circuit Court of Appeals Chief Judge Sutton explains:

> Every decision upholding the law creates the risk of a diminished data point, a new binding precedent that expands the world of plausible explanations for upholding still more laws. * * * The inaction of courts over time permits legislatures to enact more dubious laws. Each non-invalidation of an unconstitutional law makes the next exercise of lawmaking power easier to withstand the supposed scrutiny of judicial review.

Sutton, *Who Decides?*, at 62.

{¶ 67} In criminal law, the beyond-reasonable-doubt standard is "essential for the protection of life and liberty," *Davis v. United States*, 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499 (1895). There, the standard works for the people and against the government. But in the constitutional-review setting, the beyond-reasonable-doubt standard diminishes constitutional guarantees and "indulges every reasonable presumption against the citizen." *Sadler v. Langham*, 34 Ala. 311, 321 (1859); *see also Varner*, 21 W.Va. at 542-543.

{¶ 68} So not only is it true that we don't really follow the beyond-reasonable-doubt standard in constitutional adjudication, it is also true that it is a good thing that we don't.

*D. What's the big deal?*

{¶ 69} All this invites another question: If we just pay lip service to the beyond-reasonable-doubt standard and do not really follow it, why should anyone care? Why waste the paper this opinion is written on?

{¶ 70} The answer is that we ought to be honest about what it is we do as judges. When we recite standards but do not actually follow them, we do a disservice to those who read our decisions and those who litigate before this court. We invite litigants to frame their arguments in terms that are not meaningful to our review. And we mislead our readers by suggesting that issues that we struggle with, and ultimately make our best considered judgments about, are easy decisions that are free from any reasonable doubt.

{¶ 71} So in my view, it is time we stop reciting a standard that we don't use, that is a poor fit for what we do, and that would be dangerous if we actually did use.

### III. The case at hand

{¶ 72} Now that we are done with the aside, let's return to the case at hand. I have little difficulty joining the court's judgment.

{¶ 73} Grevious claims that R.C. 2953.08(D)(3) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because people convicted of aggravated murder in Ohio do not have the same ability as other felons to appeal their sentences as "contrary to law." "Felons are not a protected class," *United States v. Hook*, 471 F.3d 766, 774 (7th Cir.2006), and neither are aggravated-murder felons in relation to other felons. A classification based on "the product of conscious, indeed unlawful, action" is not suspect, *Plyler v. Doe*, 457 U.S. 202, 220, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). And the right to appeal does not rank as fundamental. *See Ross v. Moffitt*, 417 U.S. 600, 610-611, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *McKane v. Durston*, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894). Thus, rational-basis review applies. *See Estelle*

*v. Dorrough*, 420 U.S. 534, 538-541, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam).

**{¶ 74}** Traditional justifications for criminal punishment like deterrence and retribution justify the General Assembly's choice in R.C. 2953.08(D) to offer aggravated-murder convicts fewer appellate rights than those convicted of other crimes. Other crimes, even violent ones, "do[] not compare with murder" "in terms of moral depravity and of the injury to the person and to the public," *Coker v. Georgia*, 433 U.S. 584, 598, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). The lack of ability to appeal an aggravated-murder sentence also offers finality to the victim's survivors sooner. The lead opinion notes another ample justification: a trial court does not have discretion over sentencing for aggravated-murder offenders such as Grevious, rendering contrary-to-law appellate review for such offenders futile. *See* lead opinion at ¶ 36; *see also* R.C. 2929.03(D)(2)(a) and (c). Grevious has not demonstrated that the statute violates the Equal Protection Clause.

**{¶ 75}** Separately, Grevious claims that his sentence violates the Equal Protection Clause because it is the product of de facto racial discrimination. Grevious does not cite a single part of the record to support that claim. He instead relies exclusively on statistical studies that document disparities in sentencing black men versus other demographics and suggests that the studies "compel an inference" that his "sentence rests on purposeful discrimination."

**{¶ 76}** "It is the individual," the United States Supreme Court has made clear, "who is entitled to the equal protection of the laws—not merely a group of individuals, or a body of persons according to their numbers." *Mitchell v. United States*, 313 U.S. 80, 97, 61 S.Ct. 873, 85 L.Ed. 1201 (1941). Thus, under *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), Grevious "must prove that the decisionmakers in his case acted with discriminatory purpose." This requires "evidence specific to his own case" to support his claim. *Id.* Grevious produces no such evidence. Indeed, he admits he "cannot prove that

there was racial motivation behind the jury's decision to impose a sentence of [life without parole]." This admission is fatal to his claim of racial bias.

{¶ 77} Finally, Grevious raises due-process and Eighth Amendment claims but offers little in support of either claim. The lead opinion correctly concludes that these claims fail as well.

### IV. Conclusion

{¶ 78} I agree with the lead opinion that Grevious has failed to establish a constitutional violation. But this court should stop saying that it will sustain a constitutional challenge only when a litigant establishes a violation "beyond a reasonable doubt." I concur in judgment only.

BRUNNER, J., concurs in the foregoing opinion.

———————————

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Koenig & Owen, L.L.C., and Charles A. Koenig, for appellant.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, urging reversal for amicus curiae, Office of the Ohio Public Defender.

———————————